UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard WON CHO,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Edward L. HARRIS, Jr.,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Patrick Anthony RIGGANS,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Murray Evans LAYBHEN,
Defendant-Appellant.

Nos. 82–1215, 82–1092, 82–1101
and 82–1388.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 14, 1982.

Decided April 10, 1984.

Patricia L. Collins, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Janet I. Levine, Deputy Federal Public Defender, Los Angeles, Cal., for Cho.

Randy Sue Pollock, Deputy Federal Public Defender, Los Angeles, Cal., for Riggans, Harris and Laybhen.

Before BROWNING, Chief Judge, GOODWIN, WALLACE, KENNEDY, TANG, PREGERSON, ALARCON, NELSON, CANBY, NORRIS, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

This is a consolidated appeal by four youths initially sentenced under the Feder-

al Youth Corrections Act (YCA), 18 U.S.C. §§ 5005–26 (1982), whose sentences were changed to adult sentences of various lengths. In each case, the youth offender had initially received a split YCA sentence—each was sentenced to YCA treatment for an indeterminate period not to exceed six years, but was required to undergo only a short period of YCA incarceration; execution of the remainder of the sentence was suspended and the youth offender was placed on probation. In each case, he was subsequently found by the district court to have violated the terms of his probation. In each case, the district court revoked the probation order and resentenced the youth offender to a period of adult incarceration. It appears that at least part of the reason for the district judge's decision to impose adult sentences on appellants was his belief that their YCA sentences had already been largely, if not completely, served.[1]

Each youth offender challenges his resentencing. Each argues that a court may not increase a YCA sentence to an adult sentence upon violation of probation. Three also argue that their adult sentences are, in any event, impermissibly longer than the YCA sentences initially imposed.[2] The government argues that the Supreme Court's opinion in *Ralston v. Robinson*, 454 U.S. 201, 102 S.Ct. 233, 70 L.Ed.2d 345 (1981), establishes that the district court's actions were proper.

The district judge recognized that his practice of changing YCA sentences to adult sentences upon revoking probation for the violation of the terms of a probation order was of questionable validity, and he expressed a desire for a holding by this court on the issue. We reverse.

1. During the hearings on appellant Riggans' motion to correct his sentence, the district judge expressed the view that he could not order execution of Riggans' YCA sentence because under that sentence Riggans would have to be discharged immediately. The judge concluded nevertheless that he was free to impose an adult sentence on Riggans.

## FACTS

### Riggans

Patrick Anthony Riggans pleaded guilty to a charge of abstracting funds from a bank in violation of 18 U.S.C. § 656 (1982). On January 31, 1977, Riggans was sentenced under section 5010(b) of the YCA, which provides for treatment as a youth offender for an indeterminate period not to exceed six years. 18 U.S.C. § 5010(b) (1982). He was required to spend the first 20 days in a jail-type institution, to be served on consecutive weekends. Execution of the balance of his sentence was suspended, and he was placed on probation for four years.

On May 26, 1977, Riggans was found in violation of his probation for failing to report for his confinement, failing to report to his probation officer, and failing to submit monthly supervision reports. The district court revoked the probation order and ordered execution of the sentence previously imposed.

On July 1, 1977, the court modified the sentence. It ordered that Riggans spend 120 days in a jail-type institution, also to be served on consecutive weekends, and once again suspended the balance of the sentence. On November 15, 1977, a petition was filed alleging that Riggans had again failed to report for his confinement, report to his probation officer, and submit monthly supervision reports. On the same day, a warrant was issued for Riggans' arrest. "Because of an acute manpower shortage in the United States Marshal's Office," the warrant was not executed until over four years later. On January 7, 1982, Riggans appeared before the court and admitted that he had violated the terms of his proba-

2. For purposes of this opinion, "YCA sentence" denotes a sentence under either section 5010(b) or 5010(c) of the YCA, 18 U.S.C. §§ 5010(b), (c) (1982), i.e., a sentence that requires that the youth receive the treatment provided for in section 5011 of the YCA, 18 U.S.C. § 5011 (1982). Sentences imposed under section 5010(d) of the YCA, 18 U.S.C. § 5010(d) (1982), requiring adult incarceration are referred to as "adult sentences."

tion. The court revoked the probation order, found him no longer suitable for handling under the YCA, and sentenced him to a three-year adult term of imprisonment.

On February 3, 1982, Riggans filed a motion to correct his sentence. His motion was denied. On this appeal, Riggans challenges the resentencing to an adult term and also argues that the government's unreasonable delay in executing his arrest warrant violated his right to due process and requires his discharge. Since February 22, 1982, Riggans has been released on a personal recognizance bond pending appeal.

*Harris*

On March 28, 1977, Edward Lee Harris pleaded guilty to one count of making a false claim against the government in violation of 18 U.S.C. § 287 (1982). He, too, was sentenced under section 5010(b) of the YCA. The court ordered that Harris be confined in a jail-type institution for the first 20 days. Execution of the balance of the sentence was suspended, and the court ordered that he be placed on probation following his period of confinement. Under the terms of his probation, Harris was to devote 600 hours to a charitable cause, report to the court every 120 days, obey all laws, and comply with the rules of the probation office. The probation order was subsequently modified to require Harris' participation in a drug treatment program.

On November 6, 1981, Harris' probation officer filed a petition for violation of probation alleging that Harris had twice furnished urine samples containing traces of phencydidrene (PCP). On November 9, 1981, the probation officer filed an amended petition alleging further that Harris had failed to report for five urine tests and had failed to devote any hours to a charitable cause for a three-week period. Harris admitted all the allegations at the probation hearing. On November 9, 1981, the district court revoked Harris' probation order, found Harris no longer suitable for handling under the YCA, and sentenced Harris to a two-year adult term of imprisonment.

Harris filed a motion to correct his sentence under rule 35(a) of the Federal Rules of Criminal Procedure. The district court denied his motion and this appeal followed. Since February 3, 1982, Harris has been released on a personal recognizance bond pending appeal.

*Laybhen*

On January 21, 1978, Murray Evans Laybhen pleaded guilty to one count of aiding and abetting the commission of an unarmed bank robbery in violation of 18 U.S.C. § 2113(a) (1982). On February 27, 1978, Laybhen was sentenced under section 5010(b) of the YCA. The court ordered that Laybhen be confined in a jail-type institution for 46 days, to be served on consecutive weekends. Execution of the remainder of the sentence was suspended, and Laybhen was placed on probation.

On June 8, 1982, a petition for violation of probation was filed alleging that Laybhen (a) was convicted of drinking an alcoholic beverage in public in violation of the Long Beach Municipal Code, (b) was convicted of malicious mischief in violation of the California Penal Code, (c) was convicted of driving under the influence of alcohol in violation of the California Vehicle Code, (d) failed to notify his probation officer in writing of his arrest by Long Beach officials for fighting in public, a violation of the California Penal Code, and (e) failed to notify his probation officer in writing of the arrest for malicious mischief that resulted in the conviction noted above.

At the probation revocation hearing, Laybhen admitted each of the allegations. On June 21, 1982, the district court revoked the probation order, found Laybhen no longer suitable for handling under the YCA, and sentenced Laybhen to a five-year term of imprisonment. The court ordered that Laybhen be incarcerated for the first six months, suspended the execution of the remainder of the sentence and placed him on probation for a period of five years. Laybhen appeals his resentencing.

*Cho*

Richard Won Cho pleaded guilty to a charge of bank robbery in violation of 18

U.S.C. § 2113(a) (1982), and, on August 7, 1978, was sentenced under section 5010(b) of the YCA. Like the other appellants, Cho was given a split sentence. In his case, the initial term of confinement was 30 days. Execution of the balance of the sentence was suspended, and he was placed on probation. The terms of his probation included a requirement that he perform 1500 hours of community service.

On March 31, 1980, the district court found Cho in violation of the terms of his probation. Cho admitted to the court that he had been convicted under state law of introducing narcotics into jail, that he had possessed a stolen handgun, and that he had failed to perform the required community service. The district court then revoked the probationary order and ordered that the YCA sentence be executed. Accordingly, Cho was ordered committed to the custody of the Attorney General for YCA treatment and supervision. Subsequently, he filed a motion to reduce his sentence under rule 35(b) of the Federal Rules of Criminal Procedure. The district court granted his motion on December 19, 1980, and reinstated his probation.

On November 23, 1981, the district court once again found Cho in violation of the terms of his probation. Cho admitted that he had been convicted under state law of robbery and using a firearm in the commission of a felony, and that he had failed to comply with the reporting and community service requirements. The district judge revoked his probation and found that he was no longer suitable for handling under the YCA. Cho was sentenced to five years of adult imprisonment, to commence upon his completion of his state sentence.

On March 11, 1982, Cho filed a motion to correct his sentence. The district court denied the motion and this appeal followed. Cho is currently in the custody of the state of California serving a four-year prison sentence that was imposed in November of 1981.

### DISCUSSION

These cases require us to determine the limits of a court's power to change a sentence imposed on a youth under the Youth Corrections Act, 18 U.S.C. §§ 5005–5026 (1982), when execution of the sentence has been suspended. Each of the appellants challenges the change in his sentence from a YCA sentence to an adult sentence. In addition, appellants Harris, Laybhen, and Cho argue that the district court impermissibly increased the length of their sentences.

### I. BACKGROUND

Section 5010(b) of the YCA, under which each of the appellants was sentenced, authorizes a court to sentence a youth offender, "in lieu of the penalty of imprisonment otherwise provided by law," to the custody of the Attorney General for an indeterminate period for treatment and supervision until he is discharged as provided in section 5017(c) of the YCA. Section 5017(c) requires the conditional release under supervision of a youth offender "on or before the expiration of four years from the date of his conviction" and his unconditional discharge "on or before six years from the date of his conviction." 18 U.S.C. § 5017(c) (1982).

Section 5023(a) states that nothing in the Youth Corrections Act "limit[s] or affect[s]" the court's power "to suspend the imposition or execution of any sentence and place a youth offender on probation" or in any wise "amend[s], repeal[s], or affect[s]" the provisions of the United States Code relating to probation. 18 U.S.C. § 5023(a) (1982). By virtue of section 5023(a), the YCA incorporates the Probation Act. *See Ralston v. Robinson,* 454 U.S. 201, 215 n. 8, 102 S.Ct. 233, 242 n. 8, 70 L.Ed.2d 345 (1981). Accordingly, courts possess the authority to require a youth offender to serve a "split sentence"—i.e., the sentencing judge may order that a youth be placed in a facility for a period of up to six months before he is placed on probation. 18 U.S.C. § 3651 (1982). *United States v. Smith,* 683 F.2d 1236 (9th Cir.1982) (en banc), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 740, 74 L.Ed.2d 962 (1983).

The Probation Act also provides that a probationer may be arrested pursuant to a warrant for violation of probation, or without a warrant by his probation officer for cause, 18 U.S.C. § 3653 (1982). It then provides that

> [a]s speedily as possible after arrest the probationer shall be taken before the court for the district having jurisdiction over him. Thereupon the court may revoke the probation and require him to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed.

18 U.S.C. § 3653 (1982).

■ If a court has suspended *imposition* of the sentence, the probation statute in no way limits its discretion to impose any sentence permitted under the applicable statute. The court may at the time of revocation impose any sentence it could have imposed at the time it initially placed the youth offender on probation. However, when, as here, a YCA sentence has been imposed and *execution* suspended, section 3653 only empowers a court, upon revocation of probation, to require the youth offender to serve "the sentence imposed, or any lesser sentence." The court may not impose a "greater" sentence. *See Roberts v. United States,* 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41 (1943); *United States v. McDonald,* 611 F.2d 1291 (9th Cir.1980); *United States v. Nagelberg,* 413 F.2d 708 (2d Cir.1969), *cert. denied,* 396 U.S. 1010, 90 S.Ct. 569, 24 L.Ed.2d 502 (1970); *see also Ralston v. Robinson,* 454 U.S. at 218 n. 10, 102 S.Ct. at 243 n. 10 ("If the defendant violates the terms of his probation, the court may 'increase' the punishment by requiring him to serve the initial sentence.").

## II. LENGTH OF THE SENTENCES

Harris, Laybhen, and Cho raise various challenges to the lengths of their sentences. First, they argue that the district court impermissibly increased the length of their sentences at the time it revoked their probation orders. The government claims that the second sentences are not invalid because they are shorter than the original sentences. The government's argument is entirely without merit.

■ A court, when ordering execution of an adult sentence that it has suspended, need not credit the adult for time spent on probation. *See, e.g., United States v. Briones-Garza,* 680 F.2d 417, 423 (5th Cir.), *cert. denied,* 459 U.S. 916, 103 S.Ct. 229, 74 L.Ed.2d 181 (1982); *Nicholas v. United States,* 527 F.2d 1160 (9th Cir.1976); *Thomas v. United States,* 327 F.2d 795 (10th Cir.), *cert. denied,* 377 U.S. 1000, 84 S.Ct. 1936, 12 L.Ed.2d 1051 (1964). The same is not true of persons sentenced under the YCA. Youths sentenced under section 5010(b) must be discharged as provided in section 5017(c). The latter section requires that the youth be conditionally released on or before the expiration of four years from the date of his conviction and unconditionally discharged on or before six years from that date.[3] The YCA thus provides that, for purposes of determining the maximum time that a sentence may run under section 5010(b), the six-year statutory period commences on the date of conviction.[4] The sentence is deemed to run *continuously* from that date. A sentence may run longer than six years only if all or a portion is tolled as a result of some exception. The United States Parole Commission's regulations provide for exceptions only when the "prisoner or parolee: (1) [i]s on court-or-

---

3. A youth as to whom a court has suspended imposition of sentence pursuant to section 5010(a) of the YCA, 18 U.S.C. § 5010(a) (1982), is also credited for the time he spent on probation. *See* Partridge, Chaset & Eldridge, *The Sentencing Options of Federal District Judges,* 84 F.R.D. 175, 202 (1980).

4. Section 5006(g) of the YCA defines "conviction" as "judgment on a verdict or finding of guilty, a plea of guilty, or a plea of nolo contendere." 18 U.S.C. § 5006(g) (1982). Accordingly, the Bureau of Prisons interprets "date of conviction" as "the date the judgment or sentence was imposed." Bureau of Prisons, Sentence Computation Manual, Chapter 7620.1 (January 9, 1974) pp. 1–2.

dered bail; (2) is in escape status; (3) has absconded from parole supervision; or (4) [is serving a sentence for civil contempt]." 28 C.F.R. § 2.10(c) (1983). Although that list of exceptions may not be exhaustive, *see Henrique v. United States Marshal,* 653 F.2d 1317, 1320–21 (9th Cir.1981), *cert. denied,* 455 U.S. 950, 102 S.Ct. 1452, 71 L.Ed.2d 664 (1982), the government does not argue that any exception is applicable to either Laybhen or Cho,[5] or that the partial tolling of Harris' sentence is material.

Harris was initially sentenced on March 28, 1977. He was resentenced to two years in an adult institution on November 9, 1981. However, under section 5017(c), his unconditional release was required on or before March 28, 1983. His two-year adult sentence extended beyond that date.[6]

Laybhen was initially sentenced on February 27, 1978. He was resentenced to five years of imprisonment on June 21, 1982. He was ordered to serve six months of that term, the remainder was suspended, and he was again placed on probation, this time for a new five-year term. However, under section 5017(c), his unconditional discharge was required on or before February 27, 1984. His June 21, 1982, sentence extends substantially beyond that date. In fact, it appears that Laybhen has already completely served his maximum YCA sentence.[7]

Cho was initially sentenced on August 7, 1978. His probation was revoked on November 23, 1981, and he was then sentenced to five years of adult imprisonment to take effect upon completion of his state sentence. However, under section 5017(c), his unconditional discharge was required on or before August 7, 1984. His November 23, 1981, sentence, to commence at some future time, extended substantially beyond that date.

■ If we were not required to compute YCA sentences continuously from the date of conviction, there might perhaps be some logic to the government's argument that the three appellants received shorter ultimate sentences the second time around. But because the law on the computation issue is clear, it is also clear that upon revocation of their probation orders the appellants all received sentences that substantially exceeded the six-year maximum period initially imposed pursuant to section 5010(b).

■ Some of the appellants also argue that the maximum term of incarceration for someone sentenced under section 5010(b) is four years from the date of conviction and that they may not be confined after that date even though they have violated the terms of their probation orders. That argument lacks merit. The YCA requires that a youth offender committed under section 5010(b) be released conditionally "on or before the expiration of four

5. We therefore need not decide whether time spent in a state prison must be credited toward service of a YCA sentence. We note also that even if Cho's sentence were tolled while he was in a state institution, that fact would not affect the result we reach in this case.

6. Harris concedes that the running of his sentence has been tolled since February 3, 1983. The government does not argue that it was tolled for any period before that date. The tolling of the sentence while a youth offender is on bail following resentencing has no bearing on any of the issues before us. When the tolling ends and the second sentence is executed, the length-of-sentence problem is precisely the same as it was on the day tolling commenced.

7. By contrast, under the sentence the district court imposed, it would be possible for Laybhen to find himself in prison as late as 1992. That

would happen if, toward the end of his period of probation, the court were to find that he had violated the terms of his probation and then ordered the five-year sentence executed. Because his latest sentence is an adult sentence, the court would not be required to credit him with the time he spends on probation. In fact, if a court could order a new five-year period of probation for violation of an initial probation order, there would be no limit to the time period during which a probationer might be made subject to being ordered to prison. Although neither party mentioned it, the fact that the Probation Act limits the period of probation to five years, including all extensions, is obviously of considerable significance here. 18 U.S.C. § 3651 (1982).

years from the date of his conviction." 18 U.S.C. § 5017(c) (1982). Each of the appellants here was released conditionally, on probation, before the expiration of four years. Each was found to have violated the conditions of his release. Each may now be returned to custody for "further treatment in an institution or other facility," 18 U.S.C. § 5020 (1982), and must be discharged unconditionally "on or before six years from the date of his conviction." 18 U.S.C. § 5017(c) (1982).[8]

## III. CHANGING YCA SENTENCES TO ADULT SENTENCES

### A. *Is an Adult Sentence "the Same as or Lesser than" a YCA Sentence?*

■ As we noted, when execution of a sentence has been suspended a court is limited, upon revoking probation, to requiring the probationer to serve "the sentence imposed, or any lesser sentence." 18 U.S.C. § 3653 (1982). The government asserts that the sentences imposed on appellants are proper even though they were changed from YCA to adult sentences. It argues that an adult sentence of a given length is not "greater" than a YCA sentence of that length. We disagree.

The YCA and its legislative history make it plain that a YCA sentence was perceived by Congress as less severe than an adult sentence of the same length. Indeed, Congress would not have considered it appropriate to describe YCA sentences in terms of "severity." As the House Report accompanying the bill explains,

> [t]he underlying theory of the bill is to substitute for retributive punishment methods of training and treatment designed to correct and prevent antisocial tendencies. It departs from the mere punitive idea of dealing with criminals and looks primarily to the objective idea of rehabilitation.

H.R.Rep. No. 2979, 81st Cong., 2d Sess. 3, *reprinted in* 1950 U.S.Code Cong.Serv. 3983, 3985. The shift from a punitive to a rehabilitative emphasis was manifested in the YCA's requirement that committed youth offenders "undergo treatment in institutions ..., including training schools, hospitals, farms, forestry and other camps, and other agencies that will provide the essential varieties of treatment." 18 U.S.C. § 5011 (1982).

■ In addition to the harsher conditions, an adult sentence is "greater" than a YCA sentence in other respects. A person sentenced under the YCA may be released conditionally at any time, and may be released unconditionally at any time after one year from the date of conditional release. 18 U.S.C. § 5017(a), (b) (1982). An adult offender, by contrast, is not eligible for parole until he has served one-third of his term, or ten years of a life sentence or of a sentence of over 30 years. 18 U.S.C. § 4205(a) (1982). In addition, a committed youth offender must be conditionally released not later than two years before the expiration of the maximum term imposed by the court. 18 U.S.C. § 5017(c), (d) (1982). There is no comparable requirement for adult offenders. Finally, also unlike adult offenders, committed youth offenders who are unconditionally discharged before the expiration of the maximum sentences imposed on them are entitled to have their convictions automatically set aside. 18 U.S.C. § 5021(a) (1982).

That Congress considered a YCA sentence less severe than an adult sentence is clearly reflected in the YCA's authorization of six-year indeterminate YCA sentences when the maximum sentence an adult convicted of the same crime could receive would be significantly shorter. *See Ralston v. Robinson,* 454 U.S. at 206 n. 3, 219–20 n. 13, 102 S.Ct. at 238 n. 3, 244–45 n. 13 (dictum); *United States v. Lowery,*

---

8. We need not decide here whether a youth sentenced under 5010(b) and returned for further treatment following a probation violation

must again be conditionally released after four consecutive years at the YCA facility if the six-

726 F.2d 474 (9th Cir.1983).[9] As Chief Justice Burger, then a circuit judge, has observed, YCA confinement "cannot be equated with incarceration in an ordinary prison," for the YCA " 'provides for and affords youthful offenders, in the discretion of the judge, not heavier penalties and punishment than are imposed upon adult offenders, but the opportunity to escape from the physical and psychological shocks and traumas attendant upon serving an ordinary penal sentence while obtaining the benefits of corrective treatment, looking to rehabilitation and social redemption and restoration.' " *Carter v. United States,* 306 F.2d 283, 285 (D.C.Cir.1962) (quoting *Cunningham v. United States,* 256 F.2d 467, 472 (5th Cir.1958)). The Chief Justice concluded that the rehabilitative aspects of YCA sentences "may be regarded as comprising the *quid pro quo* for a longer confinement but under different conditions and terms than a defendant would undergo in an ordinary prison." *Id.* at 285. If a YCA sentence is "not heavier" than a significantly shorter adult sentence, and if the terms and conditions of a YCA sentence compensate for its greater length, the conclusion that a YCA sentence is less severe in kind than an adult sentence is inescapable. *See also Ralston v. Robinson,* 454 U.S. at 225, 102 S.Ct. at 247 (Stevens, J., dissenting) ("[T]here can be no question about the fact that an adult sentence is more severe than a YCA sentence.").

Appellees argue that *Ralston v. Robinson,* 454 U.S. 201, 102 S.Ct. 233, 70 L.Ed.2d 345 (1981), stands for the proposition that an adult sentence is not "greater" than a YCA sentence of the same duration. *Robinson* involved a seventeen-year-old who received a ten-year YCA sentence when he pleaded guilty to a charge of second-degree murder.[10] While undergoing YCA incarceration, Robinson assaulted a federal officer using a dangerous weapon in violation of 18 U.S.C. §§ 111 and 1114 (1982), and was convicted. The district court initially imposed a ten-year adult sentence for the assault, but later reduced the sentence to 66 months, to be served consecutively to the YCA sentence. Robinson was twice transferred to facilities providing greater security. Subsequently, he pleaded guilty to another charge of assaulting a federal officer. A different district court sentenced Robinson to one year and one day of adult imprisonment, to run consecutively to the other sentences.

After Robinson received the second adult sentence, he was classified as an adult offender for the remainder of the term of his YCA sentence. Robinson challenged his reclassification, arguing that his sentence had been increased in violation of the well-settled rule that a sentence, once imposed and partially served, may not be increased. The Supreme Court rejected his challenge and held that the YCA implicitly authorized the change in his sentence.[11]

---

year maximum period for supervision has not run.

**9.** *See also* Hearings before Subcommittee of the Committee on the Judiciary, United States Senate at 44 (1949) (statement of Judge John J. Parker):

After a man is sentenced, irrespective of the time provided in the statute defining the crime, if he is sentenced under this act he is sentenced to at least 6 years of corrective treatment even though the act ·may prescribe only 2 years' punishment. When he goes in under this system he may be kept under its supervision for 6 years. But he may also be released at any time.

**10.** Robinson was sentenced under 18 U.S.C. § 5010(c) (1982), which provides as follows:

If the court shall find that the youth offender may not be able to derive maximum bene-

fit from treatment by the Commission prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Commission as provided in section 5017(d) of this chapter.

**11.** Robinson was reclassified as an adult offender pursuant to a Bureau of Prisons policy statement providing for reclassification of youth offenders who have also been sentenced to concurrent or consecutive adult terms. Bureau of Prisons Policy Statement No. 5215.2, p. 1 (Dec. 12, 1978). The Court in *Robinson* decided that it was beyond the power of the Bureau of Pris-

Contrary to the government's suggestion, the Court in *Robinson* recognized that an adult sentence is more severe than a YCA sentence. For instance, in addressing the dissent's assertion that the Court's holding is "inconsistent with the common-law rule that 'a punishment already partly suffered be not increased,'" 454 U.S. at 218 n. 10, 102 S.Ct. at 244 n. 10 (quoting 454 U.S. at 223, 102 S.Ct. at 246 (Stevens, J., dissenting)), the Court did not deny that by changing a YCA sentence to an adult sentence a court is "increasing" the sentence. Rather, it noted that the common-law rule does not apply when Congress has authorized an increase in sentence. As an example, the Court pointed to the situation in which a court has "impose[d] a suspended sentence and probation, under the general probation statute or under the YCA." *Id.* The Court observed that "[i]f the defendant violates the terms of his probation, the court may 'increase' the punishment by requiring him to serve the initial sentence." *Id. See also Robinson,* 454 U.S. at 225 n. 5, 102 S.Ct. at 247 n. 5 (Stevens, J., dissenting) ("The Court does not deny that an adult sentence of a given number of years is more severe than a YCA sentence for the same number of years.").

Thus, rather than departing from the view—implicit in *Carter* and all but explicit in the YCA and its legislative history—that an adult sentence is different in kind from a YCA sentence, the Court's opinion in *Robinson* appears to acknowledge that an adult sentence is more severe than a YCA sentence. We too implicitly recognized that fact in a case decided after *Robinson.* In *United States v. Lowery,* 726 F.2d 474 (9th Cir.1983), we once again applied the "long recognized" rule that "[the YCA's] emphasis on rehabilitation constitutes a *quid pro quo* for the potential of longer incarceration under the YCA." *Id.* at 478. We continue to adhere to that view. Accordingly, we hold that an adult sentence is "greater" than a YCA sentence for purposes of the Probation Act.

### B. When May a Court Increase a YCA Sentence to an Adult Sentence?

As we have just noted, the Court in *Robinson* acknowledged the common-law rule that a sentence, once imposed, cannot be increased. *See Robinson,* 454 U.S. at 218 n. 10, 102 S.Ct. at 244 n. 10. *See generally Ex Parte Lange,* 85 U.S. (18 Wall.) 163, 168, 21 L.Ed. 872 (1873). The Court said, however, that the rule does not apply when Congress has authorized an increase. It then held that the YCA implicitly authorized the increase in Robinson's sentence.[12] We now must determine the scope of that implicit statutory exception to the common-law rule.

The government argues that under the YCA a court may change a YCA sentence to an adult sentence whenever it finds that further YCA treatment would be futile. Some language in *Robinson* supports such a broad reading. For instance, after discussing the YCA's requirement that committed youth offenders be segregated from adult prisoners, the Court asserts that it "do[es] not read that language as requiring the judge to make an *irrevocable* determination of segregation or treatment needs, or as precluding a subsequent judge from redetermining those needs in light of inter-

---

ons to reclassify persons sentenced under the YCA as adults, *see Robinson,* 454 U.S. at 211–13, 102 S.Ct. at 240–41, and invalidated the policy statement, 454 U.S. at 213, 102 S.Ct. at 241. The Court held that only a court may reclassify a youth offender as an adult offender. It stated that it expected that, in exercising that power, judges in the future would make explicit findings that the youths involved would not benefit from YCA treatment during the remainder of their youth terms. It decided that in Robinson's case it was not necessary to invalidate the reclassification because the second sentencing judge had found that Robinson would not benefit further under the YCA and had declined to sentence Robinson under that Act.

12. The Court did make it clear, however, that it was not deciding that the YCA's authorization of an increased sentence upon a subsequent conviction was constitutional. Rather, it said that the question had not been raised below. *See Robinson,* 454 U.S. at 220 n. 14, 102 S.Ct. at 245 n. 14. In view of our disposition of these cases, we also need not decide the constitutional question.

vening events." 454 U.S. at 211, 102 S.Ct. at 240 (emphasis in original). And at one point the Court describes its holding thus: "[W]e hold that a judge may modify the essential terms of treatment of a continuing YCA sentence if he finds that such treatment would not benefit the offender further." 454 U.S. at 217, 102 S.Ct. at 243 (footnote omitted).

Other parts of the Court's opinion, however, make it clear that the Court was only deciding whether a court may change the remainder of the youth's YCA sentence to an adult sentence *when it sentences a youth offender for a crime committed during his YCA term. See, e.g.,* 454 U.S. at 214, 102 S.Ct. at 241 ("Our review of the legislative history reveals no explicit discussion of the trial court's options in sentencing a youth who commits a crime while serving a YCA sentence; Congress apparently did not consider this specific problem."); *id.* ("The history and structure of the YCA ... demonstrate Congress' intent that a court—but not prison officials—may require a youth offender to serve the remainder of a YCA sentence as an adult after the offender has received a consecutive adult term."); *id.* at 216 n. 9, 102 S.Ct. at 243 n. 9 ("As we hold today, a judge imposing a *consecutive* adult sentence may find that continued YCA treatment during the unexpired term would be futile, and his finding may take effect immediately." (emphasis in original)); *id.* at 217, 102 S.Ct. at 243 ("We therefore conclude that a judge who sentences a youth offender to a consecutive adult term may require that the offender also serve the remainder of his youth sentence as an adult."); *id.* at 220, 102 S.Ct. at 245 ("In conclusion, we are convinced that Congress did not intend that a person who commits serious crimes while serving a YCA sentence should automatically receive treatment that has proved futile."); *id.* at 220 n. 14, 102 S.Ct. at 245 n. 14 ("Congress intended that a YCA sentence contain within it the possibility that, if the offender commits a subsequent offense, the court may modify the YCA treatment terms.").[13] Furthermore, the opinion demonstrates that the Court did not contemplate that its holding would be extended to cases not involving a second criminal conviction. When explaining how its holding should be implemented, the Court assumed that all youths to be resentenced would have been previously convicted of another crime:

> The standards that a district judge should apply in determining whether an offender will obtain any *further* benefit from YCA treatment are no different from the standards applied in imposing a sentence originally. Of course, the judge should consider the fact that the offender has been convicted of another crime.

454 U.S. at 218, 102 S.Ct. at 244 (emphasis in original).

■ The government now asks us to extend the exception the Court found implicit in the YCA to cases in which there has not been a criminal conviction, but only a violation of the terms of a probation order. We decline to do so. After studying the Court's opinion in *Robinson,* along with the YCA, the Probation Act, and the relevant case law, we have concluded that the YCA does not authorize courts to increase YCA sentences to adult sentences when there has been only a probation violation. Rather, a YCA sentence may be converted to an

**13.** In addition, the Court justifies its holding in part by pointing to other situations in which a court may indisputably require a youth offender to begin serving an adult sentence immediately. All of the Court's illustrations involve a subsequent criminal conviction. For example, the Court notes that a youth who was originally placed on probation under section 5010(a) of the YCA and who is later convicted of criminal assault may receive an adult sentence, to begin immediately, for the original crime, for the assault, or for both. 454 U.S. at 215–16, 102 S.Ct. at 242–43. The Court also points out that a committed youth offender who is subsequently convicted of a crime may receive a concurrent adult sentence for the second crime. He would then begin serving the adult sentence immediately. 454 U.S. at 216–17 & n. 9, 102 S.Ct. at 243–44 & n. 9. By contrast, when discussing a judge's options upon revoking probation, the Court states that a court may "requir[e] [the probationer] to serve the initial sentence." 454 U.S. at 218 n. 10, 102 S.Ct. at 244 n. 10.

adult sentence only when a district court has convicted the youth offender of an additional criminal offense.

To begin with, where a long-established common-law rule is designed to protect basic individual rights, we are reluctant to broaden an implied statutory exception unless compelled to do so by binding legal principles or common sense. It is in order to prevent "gross injustice" to persons convicted of criminal offenses that courts are foreclosed from increasing punishments. *Ex Parte Lange*, 85 U.S. (18 Wall.) 163, 168, 21 L.Ed. 872 (1873). There is a strong presumption in favor of the common-law rule, and there would be significant constitutional ramifications to any change we implied or any extension of *Robinson* we authorized, *id.* at 170, 21 L.Ed. 872; *cf.* *supra* note 12 (the *Robinson* Court did not reach the constitutional issue). We therefore resolve all doubts against a broad construction of the implied statutory exception to the rule.

1. *Conflict with the Probation Act.* The cases before us differ in significant respects from *Robinson*. First, and most important, these cases, unlike *Robinson*, are controlled by clear and unambiguous statutory language. In *Robinson*, the Court emphasized that the YCA and its legislative history contain "no explicit discussion of the trial court's options in sentencing a youth who commits a crime while serving a YCA sentence." 454 U.S. at 214, 102 S.Ct. at 241. In glaring contrast, the YCA expressly limits a court's options when exercising its authority to revoke probation. As the Court stated, "[b]y virtue of § 5023(a), the YCA incorporates 18 U.S.C. § 3653." 454 U.S. at 215 n. 8, 102 S.Ct. at 242 n. 8. Section 3653 of the probation statute states in no uncertain terms that upon the arrest of a probationer upon whom sentence has been imposed a court "may revoke the probation and require him to serve the sentence imposed, or any lesser sentence." 18 U.S.C. § 3653

(1982). The authority of the courts upon revoking probation is thus clearly delimited by statute. A court may order that the sentence previously imposed be executed or that a lesser sentence be served. A court may not, however, increase the sentence previously imposed. As we noted when we addressed the same issue in *United States v. McDonald*, 611 F.2d 1291, 1295 (9th Cir. 1980), "[w]e possess no power to rewrite legislation."

In *McDonald*, we held, as we hold today, that a court exercising the authority granted it by the Probation Act may not change a YCA sentence to an adult sentence. The government argues that *Robinson* overruled that decision. This argument overlooks two essential points. First, in *Robinson* the offender was not on probation and the Court was therefore not required to consider the Probation Act or its implications. Second, like us, the Supreme Court possesses no power to rewrite legislation; nor can we lightly assume that it intended to do so.

The conservative construction we give the Court's opinion avoids a direct conflict with the Probation Act. As we read that Act, when a court is acting in connection with the imposition of a sentence upon a subsequent criminal conviction, the limits the statute places on a court's authority to act upon a violation of a probation order do not apply. Because we construe the YCA as authorizing a court to increase a YCA sentence to an adult sentence when it is acting pursuant to its sentencing authority —i.e., in connection with the imposition of an adult sentence for a subsequent crime— but not when it is acting solely under the revocation powers granted it by the probation statute, *Robinson* and the Probation Act may be fully reconciled. A contrary construction would in effect read the provision of the Probation Act prohibiting increases in sentences completely out of the YCA.[14]

---

**14.** The applicability of the Probation Act distinguishes the instant case from the District of Columbia Circuit's recent brief *per curiam* decision in *In re Coates,* 711 F.2d 345 (D.C.Cir.1983). Not faced with unambiguously conflicting statutory language, the *Coates* court treated the

██ 2. *Lack of Reasons for Implying Exception.* The reasons for finding an implied statutory exception authorizing courts to increase YCA sentences to adult sentences were compelling in *Robinson.* Here they are not.

*Robinson* presented the question of what to do with an offender for the remainder of his YCA sentence when consecutive adult sentences await him upon completion of that term. The rehabilitative goals of the YCA—which were to be achieved largely by avoiding placement of youths in an environment that was thought to foster criminal behavior—can hardly be expected to succeed when the youth is to be placed in an adult institution immediately after his YCA sentence. It seems pointless to require the government to continue to provide treatment to a youth offender when upon completion of the course the youth will immediately "graduate" to an adult institution. The Court thus reached what was plainly the only sensible decision: it held that the YCA implicitly authorizes a judge who sentences a youth offender to a consecutive adult term of imprisonment to require the youth to serve the remainder of his YCA sentence in an adult institution.

The instant cases do not present a comparable problem. Youths who have not been convicted of a subsequent offense and are being sentenced solely as a result of a probation violation will not graduate to an adult institution immediately upon completion of the sentence imposed. And while the probation violation may indicate that these youths are not suitable for treatment as probationers, such a violation does not mean that the youths are necessarily unsuited for treatment in a YCA facility. Certainly, there is no reason to conclude that YCA treatment would be pointless merely because a youth violated the terms of a probation order. To the contrary, treatment in a YCA facility would seem to be the sensible next step. More important, that is the procedure the YCA appears to contemplate, at least in the case of a split sentence imposed under 5010(b).[15]

Among the factors the *Robinson* Court considered in arriving at its holding was the undesirability of herding "incorrigible" youths with the other youths being treated. *See Robinson,* 454 U.S. at 207–08, 102 S.Ct. at 237–38. However, a youth who has committed a probation violation that does not rise to the level of a crime is hardly a "mature," "sophisticated," "hardened," "older criminal" who has mastered "criminal techniques" and will teach them to "impressionable" novices. 454 U.S. at 208, 102 S.Ct. at 238 (quoting H.R.Rep. No. 2979, 81st Cong. 2d Sess. 2–3 (1950)). Furthermore, there appears to be nothing in the YCA that prevents prison officials from segregating those youths who prove to be "incorrigible" from the rest.[16]

*Robinson* holding as dispositive even in the absence of a second conviction. *Coates* also presented a somewhat different problem in that it involved a sentence under section 5010(c), not section 5010(b), of the YCA. *See infra* note 18. In any event, to the extent that *Coates* may be inconsistent with our analysis, we do not follow it here.

15. The very terms of a split sentence under section 5010(b) demonstrate that the contemplated consequence for violation of probation is commitment to a youth facility. The sentence that is suspended while the youth is on probation is a sentence to a youth facility. Even assuming that the court may increase the punishment in some cases, it would turn the statute on its head to assume that it would be futile to treat youths who violate the terms of their probation orders in youth facilities. If that were the case, why would split sentences be imposed in the first place?

16. Appellant Cho was convicted by a state court for a crime committed after his YCA sentence was imposed. He is currently serving a state prison term. Because Cho would be required to serve the remainder of his YCA sentence, if indeed any part of it remained to be served, *cf. supra* note 5, *after* he is released from state prison, his case differs considerably from Robinson's. YCA treatment is not necessarily futile simply because the youth offender has previously received punitive treatment.

We recognize that some of the policies discussed in this opinion would favor granting courts the power to increase the severity of the remainder of a YCA sentence when there has been a subsequent state conviction. However, that is a decision for Congress to make. Extending the *Robinson* exception to cases in which there has been a subsequent state conviction may well not accord with Congress' apparent intention that the authority to change the

In short, neither logic nor common sense compels a conclusion that the YCA implicitly authorizes courts to increase YCA sentences to adult sentences where there has been a probation violation but not a subsequent criminal conviction. Indeed, both compel the opposite conclusion.[17]

 3. *Lack of Due Process and other Procedural Protections.*[18] A third major contrast between *Robinson* and the cases before us supports our decision not to broaden the implied statutory exception. Persons who have been properly convicted of a second crime have been afforded all the safeguards that the government must observe before depriving someone of his liberty. By contrast, a person whose probation has properly been revoked has been provided a much less formal hearing, without "the full panoply of rights that attend a criminal prosecution." *United States v. Sciuto,* 531 F.2d 842, 845 (7th Cir.1976); *United States v. Strada,* 503 F.2d 1081, 1085 (8th Cir.1974). Courts have held, for instance, that probationers are not entitled

to trial by jury, *see, e.g., United States v. Nagelberg,* 413 F.2d 708 (2d Cir.1969), *cert. denied* 396 U.S. 1010, 90 S.Ct. 569, 24 L.Ed.2d 502 (1970), or to the protections accorded criminal defendants regarding notice or specification of charges, *United States v. Evers,* 534 F.2d 1186 (5th Cir.), *cert. denied,* 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976), and that rules of evidence need not be strictly observed, *see, e.g., United States v. Cates,* 402 F.2d 473 (4th Cir.1968). Most important, the standard of proof of a probation violation need not even approach the "beyond a reasonable doubt" standard required for a criminal conviction:

> Evidence that would establish guilt beyond a reasonable doubt is not required .... Probably evidence rising to the level of substantial evidence is not even required, absent arbitrary and capricious action in the revocation. All that is required is that the evidence and facts be such as to reasonably satisfy the judge

---

initial sentence ordinarily be exercised by the judge imposing the adult sentence for the second crime: state judges clearly cannot increase the severity of a federal sentence. Moreover, there is a broad range of state, county, and municipal offenses. Authorizing federal courts to increase punishment for a federal offense on the basis of a subsequent state conviction might require federal judges to become unnecessarily involved in determining state-law issues. If a conviction of a "serious crime" is required before a YCA sentence may be changed to an adult sentence, *cf. Robinson,* 454 U.S. at 220, 102 S.Ct. at 245, questions of federal policy would exist with respect to how to deal with differing state treatment of similar offenses for purposes of federal sentencing. The potential problems that might arise were we to extend *Robinson* to state convictions persuade us that we would need a far clearer signal from Congress in order to do so.

**17.** The dissent argues that our holding denies the sentencing judge needed flexibility. It asserts that we "assume that whether a youth will benefit from YCA treatment remains a static proposition." The dissent misapprehends our position. We recognize that a judge's imposition of an indeterminate YCA sentence may prove to have been ill-advised. That observation, however, is of little moment. Subsequent events may cause judges to regret their decisions not to impose on defendants—whether

youth or adult—the maximum possible sentence. Yet we do not understand the dissent to suggest that a judge may increase the length of a sentence that in light of subsequent events proves to have been too lenient or too short to provide the maximum benefit to the person sentenced. Our opinion, like the dissent, simply recognizes that there are limits to a judge's flexibility after he has imposed a sentence. Here, the limit is imposed by the express language of the Probation Act.

**18.** The dissent, citing a previous dissent, chides us for our "unnecessary foray" into constitutional territory. In our "foray" we point out a number of constitutional questions that would be raised were we to construe the YCA in the manner suggested by the dissent. We do not, however, decide those questions. Our approach is consistent with the well-settled rule that statutes should, if possible, be construed in a manner that avoids the necessity of deciding doubtful constitutional issues. *See, e.g., United States v. Delaware & Hudson Co.,* 213 U.S. 366, 29 S.Ct. 527, 53 L.Ed. 836 (1909). In view of that rule of construction, and given the dissent's apparent disagreement with all of our other conclusions, we find the dissent's characterization of our analysis as "unnecessary" mystifying. Because it is clear from the dissent that reasonable persons may differ regarding our other conclusions, we think it particularly appropriate to apply the *Delaware & Hudson* rule here.

that the conduct of the probationer has not been as good as required by the conditions of probation.

*United States v. Francischine*, 512 F.2d 827, 829 (5th Cir.), *cert. denied*, 423 U.S. 931, 96 S.Ct. 284, 46 L.Ed.2d 261 (1975).

A statute allowing a court to increase a criminal sentence after such an informal proceeding would raise serious constitutional questions. At any rate, we have some doubt that Congress would, without saying so expressly, authorize courts to increase criminal sentences by means of a procedure that falls so far short of what the Constitution requires for a criminal conviction. We therefore do not read into the YCA a silent authorization to increase sentences in the absence of a subsequent conviction.[19]

4. *Other Constitutional Problems.* Finally, we believe that allowing courts to increase YCA sentences to adult sentences presents other constitutional problems— problems which may also exist when there has been a second conviction, but which are certainly more severe when there has not. In *Carter v. United States*, 306 F.2d 283 (D.C.Cir.1962), then Circuit Judge Warren

Burger brushed aside a proportionality challenge to a YCA sentence of up to six years imposed on a youth convicted of a misdemeanor for which an adult could have been sentenced to no more than one year of incarceration. The different nature of a YCA sentence, Judge Burger observed, "may be regarded as comprising the *quid pro quo* for a longer confinement." 306 F.2d at 285. If YCA treatment may be withdrawn, however, there would once again be substantial proportionality problems in many cases. *See Solem v. Helm*, —— U.S. ——, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (life sentence without possibility of parole violates eighth amendment when imposed on person convicted of seven minor, nonviolent crimes). There would also appear to be equal protection problems with a scheme that allowed courts to impose a close-to-six-year adult sentence on a youth when the maximum prison term an adult could receive would be substantially shorter. *See Robinson*, 454 U.S. at 219, 102 S.Ct. at 244 n. 13.[20] Although the holding in *Robinson* might give rise to some of the same problems if it is applied to section 5010(b) cases, the problems would be more severe when the defendant has not committed any additional criminal offense and

---

**19.** We recognize that the due process problems would be met if we required that appropriate safeguards be observed at probation violation hearings that result in increased sentences. That, however, is the type of change that we think Congress would have provided for expressly if it so intended. We find no indication in the YCA or its legislative history that Congress envisioned any such revision of the probation revocation procedures.

In any event, substantial constitutional issues would remain even if we required that courts revoking probation observe the constitutional safeguards required in criminal trials. For instance, if a court may impose on a probationer a punishment—above and beyond the punishment he received upon his initial criminal conviction—merely for violating the terms of his probation order, would those terms then constitute criminal laws? If so, under what circumstances may Congress delegate the power to enact those laws to district courts and to the Parole Commission? Finally, could those laws be as vague and overbroad as conditions of probation commonly are, *see, e.g.*, 28 C.F.R.

§ 2.40 (1983) (mandatory conditions of parole include the following: "[t]he parolee shall not drink alcoholic beverages to excess," 28 C.F.R. § 2.40(9) (1983); "[t]he parolee shall not associate with persons who have a criminal record unless he has permission of his probation officer," 28 C.F.R. § 2.40(10) (1983))?

**20.** A youth may be given a six-year indeterminate sentence under section 5010(b) even when an adult convicted of the same crime could be sentenced to a maximum of one year and one day of imprisonment. *See United States v. Lowery*, 726 F.2d 474 (9th Cir.1983). In *United States v. Amidon*, 627 F.2d 1023 (9th Cir.1980), we decided that the Federal Magistrates Act of 1979, 18 U.S.C. § 3401 et seq. (1982), amended the YCA insofar as it authorized imposition of a six-year indeterminate sentence on a youth convicted of a misdemeanor. While we do not disturb that holding here, we note that other Courts of Appeals have declined so to interpret the Magistrates Act. *See United States v. Donelson*, 695 F.2d 583, 585–87 (D.C.Cir.1982); *United States v. Van Lufkins*, 676 F.2d 1189 (8th Cir. 1982).

thus has not been convicted of any additional violation.[21]

For the foregoing reasons, we hold that a YCA sentence may be converted to an adult sentence only when a district court has convicted a youth offender of an additional crime.

## CONCLUSION

The sentences of Harris, Laybhen, and Cho are impermissibly longer than the sentences initially imposed on them. All of the appellants' sentences were impermissibly increased from YCA to adult sentences. We reverse and remand all four cases to the district court for further proceedings consistent with this opinion.[22]

GOODWIN, TANG, PREGERSON, NELSON, CANBY and NORRIS, Circuit Judges, concur in this opinion.

## REVERSED AND REMANDED.

WALLACE, Circuit Judge, concurring and dissenting:

I agree that when a district court imposes a Youth Corrections Act (YCA) sentence under 18 U.S.C. §§ 5010(b), 5017(c), but suspends execution of the sentence, *see* 18 U.S.C. § 5010(a), it may not later require the committed youth offender to serve a longer term than permitted by the YCA. The six year statutory limit of subsection 5017(c) begins on the date of conviction, and any modification because of a later probation revocation may not extend the sentence beyond that time. I also agree that if a district court suspends imposition of a YCA sentence and places the youth offender on probation, *see* 18 U.S.C. § 5010(a), 18 U.S.C. § 3653 does not restrain it in resentencing him, because of a later probation revocation, either under the YCA or as an adult.

The majority, however, also holds that an adult sentence is intrinsically more severe than an equally long YCA sentence, and that when a district court suspends execution of a sentence it lacks the discretion, upon revoking a youth offender's probation, to find that further YCA treatment will not benefit him. Because I believe this holding unnecessarily straps the district court, is inconsistent with the word and spirit of Supreme Court authority, and ultimately undermines the YCA's rehabilitative goals, I dissent.

## I

In enacting the Youth Corrections Act of 1950, Congress envisioned a rehabilitative program that included "trade training in metal and woodwork ... summer camp with work and recreational programs which keep the boys out of doors ... [and] agriculture and stock raising." H.R.Rep. No.

---

21. The Court did not have to confront proportionality or equal protection problems in *Robinson* because the sentence involved in that case was a section 5010(c) sentence. Unlike a section 5010(b) sentence, a sentence imposed under section 5010(c) may not be longer than the sentence an adult convicted of the same offense could receive. 18 U.S.C. § 5010(c) (1982). *See supra* note 10. Allowing a court to increase a section 5010(c) sentence to an adult sentence thus would not raise the same proportionality or equal protection problems involved in changing a section 5010(b) sentence.

The Court did recognize the possible existence of constitutional problems if its holding were applied to section 5010(b) cases. It stated that it "assume[d] that district judges will keep these considerations in mind when deciding whether to modify YCA treatment terms of a sentence imposed under § 5010(b)." 454 U.S. at 219 n. 13, 102 S.Ct. at 244 n. 13. The problems, however, are not susceptible of easy solution.

22. Appellant Riggans also raises a due process claim. When imposing Riggans' adult sentence, the district court expressed the view that service of the sentence was not tolled for any part of the five years of his earlier sentence that passed before his warrant was executed. Because it is now over seven years since Riggans' conviction, and the record does not reflect any unlawful conduct on his part during that period other than the failure to comply with the conditions of the probation orders, we think there is a strong possibility that the district court will not again order that Riggans be placed in custody. We therefore do not now reach the due process claim but retain jurisdiction to consider it in the event a further sentence is ordered. Any further proceedings in this court instituted as a result of any action by the district court following this limited remand may be by motion and shall be referred to the original three-judge panel. The parties shall promptly notify this court of any action taken in the district court.

2979, 81st Cong., 2d Sess., *reprinted in* 1950 U.S.Code Cong.Serv. 3983, 3987. Perhaps the YCA "was the product of a time at which there was much greater optimism than exists today about the possibility of changing behavior patterns of young offenders." 3 C. Wright, *Federal Practice and Procedure* § 531, at 159 (2d ed. 1982). Many question the continuing vitality of this rehabilitative ideal. *See, e.g., United States v. Amidon,* 627 F.2d 1023, 1026 (9th Cir.1980) (the Federal Magistrates Act of 1979 indicates that "the original rehabilitative purposes of the YCA have generally been abandoned") (dictum); Allen, *The Decline of the Rehabilitative Ideal* (1981); Martinson, *What Works?—Questions and Answers About Prison Reform,* 35 Pub.Interest 22 (1974); Van Den Haag, *Could Successful Rehabilitation Reduce The Crime Rate?,* 73 J.Crim.L. & Criminology 1022 (1982). Nevertheless, absent a clear sign from Congress that it has wholly rejected this rehabilitative ideal, *cf. United States v. Donelson,* 695 F.2d 583, 588 (D.C. Cir.1982), *citing United States v. Hopkins,* 531 F.2d 576, 585 n. 51 (D.C.Cir.1976), we may not update the YCA "by judicial legislation under the guise of construction," *Dorszynski v. United States,* 418 U.S. 424, 442, 94 S.Ct. 3042, 3052, 41 L.Ed.2d 855 (1974) (*Dorszynski*), *quoting Blockburger v. United States,* 284 U.S. 299, 305, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The majority correctly points out that "[w]e possess no power to rewrite legislation." Majority op. at 1271, *quoting United States v. McDonald,* 611 F.2d 1291, 1295 (9th Cir.1980). Accordingly, we recently reaffirmed our adherence to the rehabilitative goals of the YCA. *See United States v. Lowery,* 726 F.2d 474, 477 (9th Cir.1983); *United States v. Bell,* 707 F.2d 1080, 1082 (9th Cir.1983).

Implementing the rehabilitative goal requires an allowance of flexibility to the sentencing judge. Thus, "the YCA strongly endorses the discretionary power of a judge to choose among available sentencing options," *Ralston v. Robinson,* 454 U.S. 201, 206, 102 S.Ct. 233, 237, 70 L.Ed.2d 345 (1981) (*Ralston*), so that "the execu-

tion of sentence [can] fit the person, not the crime for which he was committed," *Dorszynski,* 418 U.S. at 434, 94 S.Ct. at 3048. We have consistently emphasized the broad scope of this discretionary power. *See, e.g., United States v. Smith,* 683 F.2d 1236, 1240 (9th Cir.1982) (we should resolve any doubt "in favor of maximizing the sentencing options available to district judges"), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 740, 74 L.Ed.2d 962 (1983); *United States v. Weislow,* 485 F.2d 560, 562 (9th Cir.1973), *cert. denied,* 415 U.S. 933, 94 S.Ct. 1447, 39 L.Ed.2d 491 (1974). So has the Supreme Court: the YCA "was meant to enlarge, not restrict, the sentencing options of federal trial courts." *Dorszynski,* 418 U.S. at 436, 94 S.Ct. at 3049. The majority, however, seeks to curtail those options. The majority holds, without any statutory or case authority, that equally long adult and YCA sentences differ inherently in their "severity." Thus, the majority interprets *Ralston* in an overly narrow, formalistic way.

The majority's "severity" argument misses the point by stating that the legislative history of the YCA shows a replacement of a retributive with a rehabilitative goal. Majority op. at 1267. This, however, merely illustrates an election among penal policies. Had Congress concerned itself chiefly with ensuring punishments of lesser severity for youth offenders, allowing the sentencing judge vast discretion over whether to apply the YCA at all would appear inconsistent. The YCA, however, clearly allows a sentencing judge to give a youth an adult sentence under section 5010(d), simply by making a "no benefit" finding, without even a statement of justificatory reasons. *Dorszynski,* 418 U.S. at 425–26, 94 S.Ct. at 3044–45. A defendant has no right to be sentenced under the YCA. *United States v. Weislow,* 485 F.2d at 562; *accord United States v. Mayo,* 721 F.2d 1084, 1093 n. 10 (7th Cir.1983). As this indicates, the YCA aims not at sentences of greater or lesser severity, but greater or lesser appropriateness. It provides an alternative sentencing structure

for application by the district judge if he believes it appropriate to the individual. *See* H.R.Rep. No. 2979, *supra, reprinted in* 1950 U.S.Code Cong.Serv. *supra,* at 3983 (emphasizing that it is in the opinion of the sentencing judge whether the rehabilitative sentencing of the YCA may fit a particular offender).

The majority next contends that because *United States v. Lowery,* 726 F.2d at 477, upholds the imposition of a potentially longer YCA sentence than the maximum term available under adult sentencing guidelines, a YCA sentence must be less severe than an equally long adult sentence. The YCA's rehabilitative aspects do provide "in a sense" a "quid pro quo for a longer confinement but under different conditions and terms ...." *Carter v. United States,* 306 F.2d 283, 285 (D.C.Cir.1962). The exchange involves the receipt of rehabilitative treatment for a possibly longer term, not the receipt of an innately less severe sentence for a possibly longer term, however, and *Carter* stands for the incommensurability of the two types of sentences. *See United States v. Donelson,* 695 F.2d at 584 (in *Carter* "we found no reason to equate the length of a Youth Corrections Act sentence with the length of an ordinary criminal sentence, because of its different purpose ... and effect ...").

Despite the temptation to create a slide rule for comparing youth and adult sentences, we gain little by fictional and over-simplified quantifications. In contrast, *United States v. McDonald,* 611 F.2d 1291 (9th Cir.1980) (*McDonald*), illustrates that comparison of adult sentencing to adult sentencing, rather than adult sentencing to YCA sentencing, makes sense. In *McDonald,* the district court found McDonald would benefit from treatment under the YCA and imposed a split sentence. However, it eventually revoked McDonald's probation, found him unsuitable for YCA treatment, and reimposed the original fine and a seven year sentence. The district court also added a three year special parole term. We found the second sentence impermissibly more severe than the original

sentence, thus violating section 3653, because:

> Not only was the appellant sentenced as an adult not suitable for handling under the [YCA] but also a special parole term was added which ... probably was not permissible in connection with the original sentence. It is also likely that parole guidelines applicable to the 1976 sentence were more stringent than those which would have been applicable to the 1972 sentence.... These features make it impossible to characterize the 1976 sentence as less severe than that imposed in 1972.

*Id.* at 1295 (citations omitted). Naturally, because of this comparison of adult parole requirements and guidelines, *McDonald* does not indicate that an adult sentence, by nature, is more severe than a YCA sentence.

The majority's other "severity" arguments are similarly weak. The majority emphasizes the opportunities for conditional discharge or expunction provided by the YCA. However, the possibilities for release or expunction all depend on demonstrated progress in treatment under the YCA. They serve as a measure of appropriateness and effectiveness of YCA treatment, and provide no "benefit" for youth offenders who prove devoid of rehabilitative promise.

Lastly, the majority errs in contending that *Ralston* "appears to acknowledge" that adult sentences are inherently more severe by failing to deny "that by changing a YCA sentence to an adult sentence a court is 'increasing' the sentence." Majority op. at 1269. Because the Court found the common law rule against increasing partially served sentences inapplicable in that case, it did not need to state a view on the issue of severity to reach its result.

## II

To arrive at its conclusions, the majority also seeks artificially to limit *Ralston.* Although it admits that the Court gave its own holding a broad characterization, *see* majority op. at 1270, the majority argues

that *Ralston* merely dealt with whether a court may modify a YCA term to an adult term after it sentences a youth offender for a federal crime committed during his YCA supervision.[1]

A person ordinarily has a right not to have a partially served sentence increased in length. This rule, however, "simply does not apply when Congress has provided a court with the power to modify a sentence in light of changed circumstances." *Ralston*, 454 U.S. at 218 n. 10, 102 S.Ct. at 244 n. 10. The Court in *Ralston* focused on judicial discretion in light of the YCA's rehabilitative goals, and held, in very general terms, that the YCA should not be read as "requiring the judge to make an *irrevocable* determination of segregation or treatment needs, or as precluding a subsequent judge from redetermining those needs in light of intervening events." *Id.* at 211, 102 S.Ct. at 240 (emphasis in original). "Intervening events" must include more than conviction of a federal crime. To read *Ralston* otherwise would mean that the sentencing judge's determination of segregation or treatment needs is irrevocable in the absence of such a conviction.

The majority also distorts the spirit of *Ralston* by fixation on federal convictions. The majority states that an intervening state conviction will not trigger the district court's power to modify a YCA sentence to an adult sentence, *see* majority op. at 1272 n. 15, while a federal conviction will. First, common sense suggests that state convictions may tell just as much as federal convictions about the propriety of continued YCA treatment for a particular youth offender. Keeping hardened criminals, albeit hardened state criminals, in YCA programs may infect others legitimately in these programs and misuse precious rehabilitative resources. Second, the best indicator of a youth offender's amenability to continued YCA treatment is not the absence of a second conviction, but what he actually did. For example, the act of robbing a bank may indicate he will not benefit from YCA treatment. If the government chooses not to prosecute the robbery, the consequent lack of a conviction does not change the act. Thus, the position of the majority is inconsistent with the pronouncement of the Court. *Ralston* clearly holds that "a judge may modify the essential terms of treatment of a continuing YCA sentence if he finds that such treatment will not benefit the offender further." 454 U.S. at 217, 102 S.Ct. at 243.

The policy that best accords with the rehabilitative aims of the YCA lets district judges decide whether any intervening events leading to a probation revocation, not just federal convictions, make further YCA treatment inappropriate. *Ralston* embodies such a policy, and we are not alone in this interpretation. As the District of Columbia Circuit recently recognized, a rule depriving the district judge of the power to modify a YCA sentence into an adult sentence when the offender will no longer benefit "would result in an inflexible rule requiring the continuation of futile YCA treatment ... and disruption of programs for other offenders who would benefit from YCA treatment." *In re Coates*, 711 F.2d 345, 347 (D.C.Cir.1983) (per curiam) (*Coates*) (citations omitted) (youth offender sentenced to concurrent terms under section 5010(c)). In *Coates*, the youth offender challenged a "no further benefit" finding made part way through his YCA sentence. No federal conviction intervened.

---

1. The majority believes *Ralston* establishes that it is "pointless to require the government to provide treatment to a youth offender when upon completion of the course the youth will immediately 'graduate' to an adult institution." Majority op. at 1272. Inconsistently, the majority does not see that this would be true whether a state or federal conviction prompted the "graduation." *See* Majority op. at 1272 n. 15. More fundamentally, however, I do not share the majority's cynicism. If a large amount of time remains under the YCA sentence, and the youth offender will "graduate" to only a short adult sentence, it may not be pointless to have the government provide him continued YCA treatment. The majority's interpretation simply does not adequately distinguish among disparate cases, any more than will the majority's assertion that a violation of probation not involving a federal conviction never shows the impropriety of continued YCA treatment.

The court concluded that his case could not "be distinguished from *Ralston* in any principled way," *id.* at 347, and explained that the Supreme Court

> recognized that when Congress divested the Bureau of Prisons of discretion to modify the basic terms of confinement for youth offenders, Congress must have intended that the sentencing court may exercise that discretion with respect to those offenders whose conduct during incarceration demonstrates their inability to benefit from further YCA treatment.

*Id.* The court properly stressed that its decision did not involve resentencing, but merely a modification of "the terms and conditions of ... confinement; the court is thus exercising the same authority with respect to youth offenders that the Bureau [of Prisons] traditionally exercises with respect to adult offenders." *Id. See Ralston*, 454 U.S. at 215, 217 n. 10, 102 S.Ct. at 242, 243 n. 10. We, too, should reject the view that the YCA and 18 U.S.C. § 3653 prevent the district court from determining whether the offender would continue to benefit from YCA treatment unless there is a subsequent federal conviction.

### III

Unfortunately, the majority does not stop with an erroneous interpretation of *Ralston*, but makes an unnecessary foray into constitutional territory. The rules governing us are clear: "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (no liberty interest implicated by the transfer of a prisoner to an institution with different rules). The reduced formality of a probation revocation hearing in part reflects a reduced liberty interest. To the extent the majority argues that this informality points to constitutional infirmities, *see* majority op. at 1273–1274, it argues counter to established Supreme Court au-

thority. *See, e.g., Williams v. New York*, 337 U.S. 241, 248–49, 69 S.Ct. 1079, 1083–84, 93 L.Ed. 1337 (1949) (changes in penology from retributive to rehabilitative theories "make it more necessary now than a century ago for observance of the distinctions in the evidential procedure in the trial and sentencing processes."). Furthermore, a district court may at its discretion impose an adult sentence on a youth offender initially, so the youth offender's liberty interest seems unlikely to expand simply because of sentencing under the YCA.

The issue of constitutional proportionality is not before us in this case. The majority should, therefore, refrain from reaching out to discuss it. *See, e.g., Rescue Army v. Municipal Court of Los Angeles*, 331 U.S. 549, 569, 67 S.Ct. 1409, 1420, 91 L.Ed. 1666 (1947). Because the majority's discussion of that issue is unnecessary to its decision, however, it remains dictum requiring no further comment. *See J–R Distributors v. Eikenberry*, 725 F.2d 482 at 498 (9th Cir. 1984) (Wallace, J., dissenting).

### IV

The overbroad arguments made by the majority will ultimately undermine the YCA's rehabilitative goals. By holding that an adult sentence is inherently more severe than a YCA sentence, that under *Ralston* district courts have discretion to find "no further benefit" in a YCA sentence for a youth offender only after an intervening federal conviction, and that the threat of constitutional infirmity lurks in the informal probation revocation process, the majority handcuffs the trial court. For example, the majority argues a probation violation "does not mean that the youths are not suitable for treatment in a YCA facility." Majority op. at 1272. That is true—but neither are all youths violating probation still suitable for rehabilitation under the YCA. Cases will arise short of an intervening conviction which involve violations so egregious that a district court could properly find further YCA treatment inappropriate.

The majority assumes that whether a youth will benefit from YCA treatment remains a static proposition. But beneficial treatment now may prove, three years later, a futile effort. In addition, requiring YCA programs to accommodate probation violators who demonstrate their unsuitability for rehabilitation together with those who will still benefit from the YCA wastes what resources the government can apply toward rehabilitation and may defeat the purpose of segregating youth offenders from hardened criminals. Nor can we overlook the possibility that removing the district judge's flexibility for a "second look" at the time of a probation violation may lead him, despite a wish to impose and suspend a sentence initially, to impose an adult sentence rather than allowing the youth, in a questionable case, to make a final effort at rehabilitation under the YCA.

Thus, although I concur in part of the majority disposition, I dissent from the rest. Until Congress states to the contrary, rehabilitation remains a central goal of the YCA. By insisting that adult sentences are inherently more severe than YCA sentences, giving *Ralston* an unnecessarily narrow reading, and otherwise removing the flexibility needed for a district court's continuing determination of the appropriateness of YCA treatment, the majority undermines that central rehabilitative goal.

BROWNING, Chief Judge, and KENNEDY and ALARCON, Circuit Judges, concur in this opinion.