UNITED STATES of America,
Petitioner,

v.

Honorable Edwin L. MECHEM, United States District Judge, District of New Mexico, and Frankie Chavez, Respondents.

No. 74–1662.

United States Court of Appeals,
Tenth Circuit.

Jan. 13, 1975.

Victor R. Ortega, U. S. Atty., and Richard J. Smith, Asst. U. S. Atty., Albuquerque, N. M., for petitioner.

Larry L. Lamb, Albuquerque, N. M., for respondent Frankie Chavez.[1]

Before SETH, HOLLOWAY and DOYLE, Circuit Judges.

PER CURIAM.

This proceeding was instituted by a petition for writ of mandamus and prohibition filed by the United States. The action seeks an order directing the respondent Judge to vacate an order that the United States withdraw its indictment against respondent Frankie Chavez, a 14-year old juvenile, and substitute an information in its place, in connection with charges of rape and murder in Indian Country, pursuant to 18 U.S. C.A. § 5032 and related provisions for juvenile proceedings. The petitioner further asks that the respondent Judge be ordered to vacate the setting of a juvenile delinquency hearing, refrain from applying juvenile provisions during pendency of the criminal proceedings, and proceed with the trial of Chavez on the indictment.

Deeming the issue raised to be substantial, we ordered an answer to be filed to the petition pursuant to Rule 21(b), F.R.A.P., and stayed the order of

1. Pursuant to Rule 21(b), FRAP, the Honorable Edwin L. Mechem advised that he did not desire to appear in the proceeding.

the trial court requiring juvenile proceedings as to Chavez. We have now considered the petition, the answer of respondent Chavez, transcripts of hearings in the trial court and authorities and arguments submitted. We agree with the views of the trial court expressed in its order of October 21, 1974, that juvenile proceedings are proper, see —— F.Supp. ——, and accordingly have vacated the stay and denied the extraordinary relief sought.

The petition relates these facts. On August 2, 1974, a federal grand jury in Albuquerque returned an indictment naming Frankie Chavez and two others as defendants on charges of rape and first degree murder in violation of 18 U.S.C.A. §§ 2, 1111, 1152, 1153, and 2031 and § 40A–9–2, N.M.S.A. (1973 Supp.). The offenses allegedly occurred on July 7, 1974.

Chavez was arraigned on August 6. He stood mute on counsel's advice and the trial court entered a plea of not guilty on his behalf. The court learned that Chavez was 14 years of age, his birthdate being November 30, 1959. The Federal Juvenile Delinquency Act then in force, 18 U.S.C.A. §§ 5031–5037, excluded Chavez from treatment under the statute. Section 5031 defined a "juvenile" as a person who has not attained his eighteenth birthday and "juvenile delinquency" as violation of a law of the United States committed by a juvenile and not punishable by death or life imprisonment. Since the charges against Chavez were of this serious nature, he was indicted for prosecution as an adult.

However, on September 7, 1974, Public Law 93–415 became effective, substantially amending the Federal Juvenile Delinquency Act.[2] Amendments to 18 U.S.C.A. §§ 5031 and 5032 now require that a juvenile under 16 not surrendered to State authorities be proceeded against under the federal juvenile statute, unless he has requested in writing on advice of counsel to be proceeded against as an adult, regardless of the nature of the crime or possible penalty.

Both of the other defendants named in the indictment were over 18 years of age and a severance was ordered for their trials. However, in view of the new statute effective September 7, before Chavez was tried the trial court entered its written order of October 21 directing the United States to withdraw the indictment as to Chavez and to file an information charging juvenile delinquency and requiring the clerk to expunge all records of the indictment pertaining to Chavez. The court also set a hearing on November 18, 1974, for an adjudication of delinquency.

The trial court was of the view that the new delinquency statute controls the manner in which juveniles are proceeded against and is largely procedural and remedial; that although the Act also deals with adjudication of a substantive offense, "juvenile delinquency," the general saving statute, 1 U.S.C.A. § 109, does not bar application of the new Act; that the new provisions manifest a policy that children of Chavez's age must be removed from the criminal process. The court concluded that the policy and procedural import of the new Act are more important than the fact that the statute may also entail creation of a substantive offense.

The Government disagrees, arguing that the new amendments relate to a penalty, forfeiture or liability within the meaning of the general saving statute, 1 U.S.C.A. § 109, so that the provisions of the prior law apply, requiring trial of Chavez as an adult. We turn to these arguments and the application of the new Delinquency Act in these circumstances.

■ The Government argues that the general saving statute preserves Chavez's pre-amendment liability to prosecution as an adult.[3] It says that the amel-

---

2. Public Law 93–415, 88 Stat. 1109, known as the "Juvenile Justice and Delinquency Prevention Act of 1974."

3. The saving statute is not made inapplicable because an amendment instead of outright repeal changes a statutory punishment. Moorehead v. Hunter, 198 F.2d 52, 53 (10th Cir.).

ioration of penalties or the provision in the new statute affording subsequent offenders a defense from criminal prosecution is irrelevant. Reliance is placed on Warden v. Marrero, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383; Perea v. United States Board of Parole, 480 F.2d 608 (10th Cir.); Page v. United States, 459 F.2d 467 (10th Cir.), cert. denied, 410 U.S. 989, 93 S.Ct. 1506, 36 L.Ed.2d 187, and similar cases.

The general saving statute, 1 U.S.C.A. § 109, provides in pertinent part:

The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. . . .

We cannot agree that the saving statute bars availability of the new Delinquency Act provisions for Chavez. The cases relied on by the Government do not deal with a comparable situation of a statutory change mandating a new basic procedure as to a class of offenders. *Marrero* held that persons convicted under a narcotics statute expressly prohibiting their consideration for parole could not subsequently be considered for parole, even though the no-parole provision had been repealed following their convictions. See also Perea v. United States Board of Parole, 480 F.2d 608 (10th Cir.). The Court found from the legislative history of the no-parole provisions that Congress intended ineligibility for parole to be part of the penalty, forfeiture or liability incurred by those violating the statute. Thus the statute involved no system apart from the usual criminal process, as we have in this case.

We feel that the answer lies in the fact that by the Juvenile Delinquency Act, Congress has barred criminal prosecution of juveniles in certain circumstances and provided for a completely separate system of treatment for them under State or Federal procedures. 18 U.S.C.A. § 5032, as amended, says that " . . . no criminal prosecution shall be instituted for the alleged act of juvenile delinquency except as provided below. . . . " This court has recognized that " . . . [t]he very purpose of the [Juvenile Delinquency] Act is to avoid prosecution of juveniles as criminals." Cotton v. United States, 355 F.2d 480, 481 (10th Cir.).

■ The Findings and Declaration of Purpose of the 1974 amendatory Act show an intent to provide a complete and improved system for assisting juvenile delinquents and runaway youths. See Pub.Law 93–415, §§ 101 and 102, 88 Stat. 1109. The amendments to the Act were for the stated purpose of enhancement of the juvenile system by assisting in the development of mechanisms designed to channel juveniles out of the criminal justice system. See S.Rep.No. 93–1011, 93d Cong., 2d Sess. (1974); 10 U.S.Code and Congressional Administrative News, p. 4239 (1974). Specifically the amendment to extend coverage of the Act even to crimes punishable by death or life imprisonment shows the intent that a juvenile under 16 should not be subject to ordinary criminal prosecution, unless he so requests in writing with advice of counsel.

The intent to remove juveniles from the ordinary criminal process is demonstrated further by the provision favoring surrender of juveniles to State authorities having programs and services adequate for the needs of juveniles. See 18 U.S.C.A. § 5032, as amended. Congress recognized that juvenile crimes are "essentially a State and local problem which must be dealt with by the State and local governments." S.Rep.No. 93–1011, 93d Cong., 2d Sess. (1974); 10 U.S.Code Congressional and Administrative News, p. 4238 (1974). Throughout, the clear intent is to provide for handling the juvenile delinquent outside the criminal justice system.

■ It is true that aside from the separate procedure provided for juvenile de-

**1196**

linquents, there is a substantive offense of "juvenile delinquency" dealt with by the statute, premised on commission of other substantive offenses. See 18 U.S. C.A. § 5031. We agree, however, with the trial judge that despite the substantive provision, the predominant purpose of the 1974 Act is procedural and remedial. The striking features of the Act are its provisions directing completely separate treatment for juvenile delinquents through State or Federal programs, and completely removing those under 16 from the ordinary criminal process, unless they consent to its jurisdiction.

We have considered United States v. Azevedo, 386 F.Supp. 622 (D.Hawaii), which supports the Government's position, and Nassar v. Commonwealth, 341 Mass. 584, 171 N.E.2d 157, reaching a similar result. *Azevedo* applies the saving statute as if in the context of dealing with general criminal statutes. We feel, however, that the distinct features and predominant purpose of the amended Juvenile Delinquency Act point to a different result.

Since the purpose of the Act is to avoid prosecution of juveniles as criminals, Cotton v. United States, 355 F.2d 480, 481 (10th Cir.), and since it recognizes the need for "immediate and comprehensive action," Pub.L.No. 93–415, § 101(b), 88 Stat. 1109, we are satisfied that Congress did not intend the ordinary criminal process to continue, through the saving statute, to reach juveniles not yet tried. We are persuaded that the policy and procedural import of the Delinquency Act are more important than the fact the Act also deals with substantive offenses. Therefore we agree with the trial court that the new procedures adopted are available to a 14 year old juvenile in the circumstances of Chavez.

Accordingly we have ordered that our prior stay be vacated and that the petition and all extraordinary relief sought by it be denied.