UNITED STATES of America, Plaintiff-Appellant,

v.

BLUE SEA LINE et al., Defendants-Appellees.

No. 76–1565.

United States Court of Appeals, Fifth Circuit.

June 6, 1977.

Robert W. Rust, U. S. Atty., Miami, Fla., Paul G. Gorman, Jr., Atty., Dept. of Justice, Crim. Div., Philip Wilens, Acting Chief, Gov. Reg. & Labor Sect., Crim. Div., Washington, D. C., for plaintiff-appellant.

Michael S. Tarre, Pearson & Josefsberg, P. A., Miami, Fla., George F. Galland, Washington, D. C., for defendants-appellees.

Before GOLDBERG, SIMPSON and FAY, Circuit Judges.

GOLDBERG, Circuit Judge:

The Government appeals from the dismissal of an October 1975 indictment charging that appellee common carriers had paid rebates in violation of 46 U.S.C. § 815, second. In 1972, subsequent to the alleged violations but over three years prior to the return of this indictment, Congress repealed the criminal penalties for violations of this and other provisions of the Shipping Act of 1916, 46 U.S.C. §§ 801 *et seq.* Civil penalties replaced these criminal sanctions. The sole question on appeal is whether the Government could bring a criminal prosecution under the repealed statute for pre-repeal acts.

We agree with the district court that the 1972 legislation worked primarily a procedural, remedial change. The monetary sanction for violating § 815, second, remained constant, though after 1972 it was part of a civil rather than a criminal enforcement scheme. Consequently, that civil enforcement scheme had immediate applicability, and the alternative of criminal prosecution was not open to the Government at the time of this indictment's return. The district court therefore properly dismissed the charges.

## I. Legislative Framework

The Capitol is the locus of all the facts relevant to the limited issue before us. Appellees are charged with violating one of the rebating prohibitions of 46 U.S.C. § 815. That substantive provision took the same form at the time of the alleged offenses, March 5, 1971 through August 7, 1972, that it does today:

It shall be unlawful for any common carrier by water . . .

Second. To allow any person to obtain transportation for property at less than the regular rates or charges then established and enforced on the line of such carrier by means of false billing, false classification, false weighing, false report of weight, or by any other unjust or unfair device or means.

Throughout the period covered by the alleged offenses, violation of § 815, second, was a misdemeanor punishable only by a fine not to exceed $5000.

This criminal sanction was one of many then present in the Shipping Act of 1916. In 1972, however, Congress came to the conclusion that criminal prosecution had not proved a satisfactory means of enforcing the Act's regulatory designs. Criminal enforcement required the Federal Maritime Commission, charged with administering much of the Act, to investigate alleged violations, document them thoroughly, and refer them to the Department of Justice for prosecution. Documentation of the criminal charges was burdensome and time consuming, exacerbated by the necessity in every case for Justice Department review and evaluation. Congress felt that the delay between offense and trial had resulted in lighter penalties, depriving the Act of its intended deterrent effect. *See* S.Rep. No. 92–1014, 92nd Congress, 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 3121, 3122 (hereinafter "S.Rep.").

Congress responded by adopting the Act of August 29, 1972, Pub.L. No. 92–416, § 1, 86 Stat. 653 (amending 46 U.S.C. §§ 801 *et seq.* (1970)). This legislation replaced many of the Shipping Act's criminal sanctions with civil penalties. The amendments also empowered the Maritime Commission to compromise the amount of any civil penalty. Act of August 29, 1972, Pub.L. 92–416, § 3; 86 Stat. 653.

By these changes Congress hoped to strengthen enforcement of the Shipping Act's commands. The government's reduced burden of proof in civil penalty proceedings would simplify documentation of violations, increasing the likelihood of successful prosecution and diminishing the delay between violation and penalty. Both these consequences would tend to increase the Act's deterrent impact without altering the substance of the Act's penalties. Additionally, by authorizing Maritime Commission compromise of civil penalties, the 1972 amendments provided a tool for reducing duplicative Justice Department review and expensive federal litigation. S.Rep., [1972] U.S.Code Cong. & Admin.News at pp. 3122–24.

Among the criminal penalties repealed and replaced by the 1972 amendments was the misdemeanor fine for violating the rebating prohibition at issue in the case at bar, 46 U.S.C. § 815, second. Violation of that provision as amended still results in a fine not to exceed $5000, the same dollar range carried by the repealed criminal sanction. The fine, however, now carries the label "civil" rather than "criminal". The 1972 shift from criminal to civil enforcement therefore changed in name only the penalty for violating § 815, second.

This legislative activity forms the background to the question before this court—whether after the shift to civil enforcement the Government retained the prerogative to levy criminal prosecutions for acts antedating the 1972 amendments.

## II. The Reach of the Saving Clause: *Penalty v. Procedure*

The common law recognized a presumption that repeal of a criminal statute abated all prosecutions which had not reached final disposition. Abatement followed both unequivocal repeals and repeals accompanied by re-enactments, even where the re-enactment increased the penalty. *See Warden v. Marrero,* 417 U.S. 653, 660, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974). Because the *ex post facto* clauses of the Constitution forbid prosecution for pre-repeal acts under any re-enactment increasing the penalty, importing the common law abatement doctrine meant that legislative inadvertence could result in a haven from prosecution for an occasional offender. *See* Comment, *Today's Law and Yesterday's Crime: Application of Ameliorative Criminal Legislation,* 121 U.Pa.L.Rev. 120, 121–27 (1972).

To eliminate from the federal system the pitfalls of abatement, Congress passed a general saving clause, which in its present version is found at 1 U.S.C. § 109:

The repeal of any statute shall not have the effect to release or extinguish any

penalty, forfeiture or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

"Penalty, forfeiture, or liability" encompasses criminal sanctions, see *United States v. Reisinger,* 128 U.S. 398, 9 S.Ct. 99, 32 L.Ed. 480 (1888), and the saving clause has been held to "bar application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commision of an offense." *Marrero, supra,* 417 U.S. at 661, 94 S.Ct. at 2537.

The government here contends that the misdemeanor liability repealed in the 1972 amendments to the Shipping Act is a "penalty" within the saving clause, so that prosecution for pre-amendment acts remains lawful after substitution of the civil enforcement scheme. The contention must be placed alongside a second line of authority holding that statutory changes in "procedure" have immediate applicability.

■ The Supreme Court has stated that "the general saving clause does not ordinarily preserve discarded remedies or procedures." *Marrero, supra,* 417 U.S. at 661, 94 S.Ct. at 2537. Although the distinction between procedure and substance tends to confuse more than clarify, courts have employed it to determine whether a given statutory change supercedes the prior law in cases arising from acts that occurred before the legislation's effective date. If a statutory change is primarily procedural, it will take precedence over prior law in such cases; if the change affects a penalty, the saving clause preserves the pre-repeal penalty.

■ *Turner v. United States,* 410 F.2d 837 (5th Cir. 1969), involved a change in the processing of conscientious objector claims under the Selective Service Act. At the time the appellant had been denied that status by his local board, statute provided for a Justice Department hearing prior to the ruling of an appeals board. Congress, dissatisfied with the delays in processing conscientious objector claims, deleted the Justice Department hearing requirement then by the time appellant's file had reached the department. This court held that the congressional action was a procedural change applicable to appellant's pending case and rejected the claim that the failure to provide the Justice Department hearing required reversal of Turner's conviction for refusal to submit to induction. In reaching this conclusion, the court recognized that "statutes affecting antecedent rights are ordinarily addressed to the future and to be given prospective effect only," but explained that "that canon of construction must yield to the rule here controlling that changes in statute law relating only to procedure or remedy are usually held immediately applicable to pending cases. . . ." 410 F.2d at 842.[1]

The Supreme Court has treated as a "procedural" change a complete shift in the forum for adjudicating a particular type of claim. In *Hallowell v. Commons,* 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409 (1916), plaintiff claimed to be the sole heir of a member of the Omaha Indian tribe. He had filed suit in district court to establish his right to land the United States previously had held in trust for the decedent. While the suit was pending, Congress had removed jurisdiction over such claims from the district court and given to the Secretary of Interior the power to ascertain the legal heirs. Justice Holmes' opinion rejected the claimant's contention that application of the change to his pending case would extinguish the liability of the United States as trustee, in violation of the general saving clause then

---

1. Turner relied on *Bowles v. Strickland,* 151 F.2d 419 (5th Cir. 1945), where this court gave immediate application to the elimination of the requirement that the Price Administrator under the Emergency Price Control Act of 1942 obtain the approval of the Secretary of Agriculture before commencing suits to recover overcharges under that Act. We applied the amendment to pending suits because it "did not affect substantive rights, but related only to the procedural machinery provided to enforce such rights." 151 F.2d at 420.

in effect. The court concluded that the statute had immediately divested the district court of jurisdiction, reasoning that "the reference of the matter to the Secretary . . . takes away no substantive right, but simply changes the tribunal that is to hear the case." 239 U.S. at 508, 36 S.Ct. at 203.

While cases like *Turner* and *Hallowell* do not control the case at bar, they do make clear that the saving clause does not eliminate the need for a federal court faced with a statutory change to determine whether that change is one affecting a procedure or a penalty. If the former, it is immediately applicable, unless the legislation itself provides otherwise; if the latter, the saving clause preserves the penalty for pre-repeal actions. Furthermore, *Hallowell's* characterization of a jurisdictional shift from district court to an administrative tribunal as not affecting substantive rights suggests that the concept of "procedural" change in this regard is not to be narrowly restricted.

The Tenth Circuit gave broad application to that concept in *United States v. Mechem*, 509 F.2d 1193 (10th Cir. 1975). The Government had charged Chavez, a 14 year old boy, with rape and murder within the special territorial jurisdiction of the United States. Through the time of arraignment, the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031–37 (1970) (amended 1974), excluded youths charged with crimes punishable by death or life imprisonment. The charges in *Mechem* were of such gravity, and the Government indicted Chavez for prosecution as an adult.

Subsequent to the arraignment, the Juvenile Justice and Delinquency Prevention Act of 1974, Pub.L. 93–415, 88 Stat. 1109 (amending 18 U.S.C. §§ 5031–37 (1970)), became effective. This legislation substantially overhauled the federal rules governing juveniles. Under the amendments, the Government must proceed under the federal juvenile statute against any person under 16 not surrendered to state authorities, regardless of the nature of the crime or potential punishment, unless on counsel's ad-

vice the youth requests prosecution as an adult.

The Tenth Circuit concluded that the amendments to the juvenile delinquency act applied to Chavez's pending trial, requiring the Government to withdraw the indictment and proceed against Chavez as a juvenile. The court recognized that the change substantially reduced the possible punishment. The court canvassed the legislative history of the 1974 amendments, however, and found consistent emphasis on enhancing assistance to juveniles by channeling them out of the criminal justice system. Recognizing that the amendments affected substantive rights, the court nonetheless concluded that "the predominant purpose of the 1974 Act is procedural and remedial." 509 F.2d at 1196. Accordingly, the general saving clause did not save criminal adult prosecution for pre-amendment offenses.

■ *Mechem* provides at least some guidance in determining whether a statutory change affects "penalty" or "procedure" for purposes of applying the general saving clause. First, the case suggests a role for reasoning by inference from the statutory language and the legislative history. Where the general saving clause is applicable, pre-repeal liability survives absent *express* provision to the contrary in the repealer. Only the narrowest of spaces is left for argument that the repealer implies that it is applicable to pending cases. Where the question is whether a statutory change affects "penalty" or "procedure", however, the inquiry is preliminary to application of the general saving clause. In the course of this inquiry, *Mechem* properly indicates that statutory language and legislative intent may be consulted in search of implications that Congress was either making a procedural change or reassessing the substance of criminal liability or punishment.

Second, *Mechem* recognized that cases will arise in which it may fairly be said that a statutory change both alters a penalty and modifies a procedure. In determining whether such a statute applies to all proceedings pending at its effective date, a

court may inquire into the predominant purpose of the change—procedural modification or penal reassessment. We now undertake such an inquiry.

### III. The Amendment at Bar

█ The district court determined that the shift from criminal to civil penalties in the 1972 amendments to the Shipping Act was predominantly a procedural and remedial change. We agree.

Congress was clearly not engaged in ameliorating criminal punishment in adopting the 1972 amendments. On the contrary, its concern was to tighten enforcement of the existing monetary sanctions. The chosen mechanism was a shift in "forum", from the criminal docket of the district courts to the halls of the Maritime Commission and, where necessary, the civil docket of the district courts. An important consequence of the shift, emphasized in the legislative history, was to reduce the Government's burden of proof.

In contrast to this complete procedural overhaul, the change in penalty was slight. The dollar range for the fines applicable to the violations alleged in the case at bar went completely untouched. The sole

change was in the sanction's label—from criminal to civil. Certainly the criminal sanction has a punitive power and gives rise to an opprobrium unique to that sanction. In the context of the case at bar, however, the elimination of any such consequences of the repealed misdemeanor penalties was but a necessary by-product of tightening a regulatory mechanism, minor in impact compared to the procedural implications of the shift to civil enforcement, and minor if operative at all in the deliberations of the 92d Congress acting in 1972.

Given Congress's singular concern with improving the means of enforcing existing monetary sanctions under the Shipping Act, we conclude that the 1972 amendments substituting civil for criminal penalties were overwhelmingly procedural in nature, hence applicable to the proceedings at bar. The government did not commence those proceedings until three years after the effective date of the amendments. Appellees' liability, if any, for the alleged violations is civil.[2]

There is, in short, nothing of substance to save, for that which was still is. Accordingly, the order dismissing the indictment is AFFIRMED.

2. The presupposition of our conclusion that criminal prosecution for pre-amendment acts did not survive is that the new civil sanctions could be exacted for those acts. Application of the civil penalties for pre-amendment acts would impose the same dollar sanction on a defendant under a less stringent burden of proof than the government was required to carry at the time of the offense.

Such a prospect, however, is distinct from cases in which a change in rules of evidence or procedure lessens the degree or amount of proof necessary to convict a defendant of a criminal offense below the quantity necessary to convict him of that same offense at the time of its commission. Such changes may run afoul of the *ex post facto* clauses of the Constitution. See *Beazell v. Ohio,* 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925); *Thompson v. Missouri,* 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898); *Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898); *Kring v. Missouri,* 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883); *Cummings v. Missouri,* 71 U.S. (4 Wall.) 277, 18 L.Ed. 356 (1866); *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798); *Donald*

*v. Jones,* 445 F.2d 601, 604–05 (5th Cir. 1971); *United States v. Henson,* 159 U.S.App.D.C. 32, 486 F.2d 1292 (1973) (en banc).

Here the reduced burden of proof would not result in the same criminal penalty as the defendant faced at the time of his offense. Rather, the result is a civil fine, admittedly equal in the eyes of the checkbook, but not in those of society. This reciprocal transformation of the sanction removes the situation from the *ex post facto* doctrine discussed above.

The presence of some alteration in penalty in the shift from criminal to civil fines does not negate our chief analysis regarding the inapplicability of the general saving clause to the case at bar. That alteration may still be outweighed by the congressional emphasis on facilitating enforcement of Shipping Act commands by eliminating procedural obstacles. Such a balance brings the case within the established canon of statutory construction—of which Congress may be assumed to be cognizant in the same manner we assume it to be aware of the general saving clause—that procedural and remedial changes have immediate applicability.