**UNITED STATES of America**

v.

**Derrick JACKSON.**

**Crim. No. K–76–053.**

United States District Court, D. Maryland.

March 7, 1988.

---

Breckinridge L. Willcox, U.S. Atty., and Veronica M. Clarke, Asst. U.S. Atty., Baltimore, Md., for U.S.

Fred Warren Bennett, Federal Public Defender, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, Senior District Judge.

Derrick Jackson was sentenced by this Court on May 4, 1976 to 15 years under the Federal Youth Corrections Act (YCA), 18 U.S.C. §§ 5005–20,[1] after being convicted of aiding and abetting a bank robbery. Between November 11, 1976 and February 4, 1980, Jackson was confined in youth offender institutions of the Federal Bureau of Prisons (the Bureau). On that latter date, Jackson was paroled. On August 27, 1986, Jackson was notified, after a parole revocation hearing had been held, that his parole was revoked because of his conviction while on parole for attempted possession of a short-barrelled shotgun, for his failure to appear in a state court proceeding in Maryland in 1980, and for being a fugitive for three years subsequent to 1980. On August 27, 1986, when Jackson received the parole revocation notice, he was confined as a youth offender at the Federal Correctional Institution at Englewood, Colorado (Englewood). On November 26, 1986, Englewood wrote to the headquarters of the Bureau in Washington, D.C. requesting that "no further benefit" proceedings be initiated by the Bureau with respect to Jackson.

In June, 1987, while confined at Englewood, Jackson completed his General

---

1. Jackson was sentenced under 18 U.S.C. § 5010(c). Prior to its repeal effective October 12, 1984, *see* note 2 and accompanying text, *infra,* that section provided as follows:

   If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the Division prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of impris-onment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Division as provided in section 5017(d) of this chapter.

Equivalency Diploma. On December 29, 1987, Jackson received thirty days' disciplinary segregation for fighting with another inmate at Englewood. Jackson's present presumptive parole date is October 30, 1990. The expiration date in connection with his service of all outstanding federal sentences is April 16, 1994.

On February 17, 1988, Jackson, represented by counsel, appeared before this Court. During that hearing, evidence was produced by the Government seeking a "no further benefit" finding under 18 U.S.C. § 5010(d) and by Jackson in opposition thereto, and the legal and factual issues discussed in this opinion were fully and ably argued by counsel for both the Government and Jackson.

## I.

■ As part of its passage of the Sentencing Reform Act of 1984,[2] effective October 12, 1984 Congress repealed certain sections of the YCA, *i.e.*, 18 U.S.C. §§ 5010–16. These sections include § 5010(c) under which Jackson was sentenced in 1976, and § 5010(d) under which the Government seeks to have this Court make a "no further benefit" finding. The repeal of the YCA requires this Court to confront the threshold question of whether it has subject matter jurisdiction to entertain the Government's request for a "no further benefit" finding.

Prior to October 12, 1984, 18 U.S.C. § 5010(d), the section of the YCA at issue in this case, read as follows:

If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision.

Pursuant to that statutory language and the case law developed by *Ralston v. Robinson*, 454 U.S. 201, 102 S.Ct. 233, 70 L.Ed. 2d 345 (1981), and its progeny, a federal district court clearly had jurisdiction before 1984 to issue a "no further benefit" finding under certain circumstances.[3] However, in the recent case of *United States v. Davison*, 655 F.Supp. 1254 (D.Idaho 1987), the court held that it could not make a "no further benefit" finding, given the repeal of 18 U.S.C. § 5010(d).

Davison had originally been sentenced in 1974 to consecutive fifteen-year and life sentences, pursuant to 18 U.S.C. § 5010(c). After federal court litigation involving whether Davison was housed as required by the YCA, the Government, about twelve years after the original sentencing, sought a "no further benefit" finding.[4] The district court noted that Congress had repealed section 5010(d) which had conferred jurisdiction upon it to make a "no further benefit" finding, and that Congress had done so without enacting a savings clause relative to that and related sections. The district court therefore concluded that it had no jurisdiction to conduct a "no further benefit" hearing. In reaching that conclusion, the court wrote:

Congress repealed the YCA without a savings clause. Congress saw fit not to make any provision in the repeal for the continued status of YCA offenders. Congress, obviously cognizant of rulings upholding the district court's right to make a no-benefit finding, repealed those provisions upon which authority to make such a finding was based. For this court to engage in a no-benefit hearing would in effect write into statute a savings clause for those provisions of the YCA which Congress repealed without a savings clause. The YCA has evaporated and any authority or duty which this court had during the dates the Act was in effect is gone. The mere fact that the Department of Justice has administratively determined that the *ex post facto* clause prohibits it from dismantling the infrastructure set up to accommodate

**2.** Pub.L. No. 98–473, 98 Stat. 1987 (codified as amended at scattered sections of 18 U.S.C. and 28 U.S.C.).

**3.** Those circumstances are more fully discussed in Part II of this opinion.

**4.** *See* Brief of Appellee in the appeal currently pending appeal before the Ninth Circuit in *United States v. Davison,* referred to in note 5, *infra.*

sentencing under the YCA has no bearing upon the issue before this court. Whether it is proper for the Bureau of Prisons to maintain that infrastructure is not before this court. The court can find no authority to act in any way under the YCA.

655 F.Supp. at 1256.[5]

As noted in *Davison,* when Congress repealed 18 U.S.C. §§ 5010–16 in 1984, Congress did not enact any specific savings clause. As part of the Sentencing Reform Act of 1984, Congress did, however, provide for a gradual five-year phasing-out of certain functions of the Parole Commission. That phasing-out does affect the powers of the Parole Commission in connection with 18 U.S.C. §§ 5017–20.[6] Section 235(b)(1)(E) of the 1984 Act is labelled "Savings Provisions," but may or may not constitute a true savings clause.[7] However, that issue need not be resolved in this case, because the general savings clause in 1 U.S.C. § 109 is applicable.[8]

1 U.S.C. § 109 states as follows:

The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. The expiration of a temporary statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the temporary statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

The words "penalty, forfeiture, or liability" as they appear in that statute refer to "all forms of punishment" for crime. *United States v. Reisinger,* 128 U.S. 398, 403, 9 S.Ct. 99, 101, 32 L.Ed. 480 (1888) (quoting *United States v. Ulrici,* 28 F.Cas. 328, 329

---

**5.** The district court filed its opinion in *Davison* on March 16, 1987. The Government noticed an appeal to the United States Court of Appeals for the Ninth Circuit on June 10, 1987 (Docket No. 87–3056). Davison, in response, has raised, *inter alia,* questions as to whether the Government's appeal was timely filed and whether the jurisdictional and substantive issues discussed in this opinion were appropriately reserved in *Davison* for appeal by the Government. *See* note 9, *infra.* Those questions are not involved in this case.

**6.** *See* Pub.L. No. 98–473, ch. II, § 235(b)(1), 98 Stat. 2032 (1984) (codified at 18 U.S.C. § 3551 note).

**7.** Section 235(b)(1)(E) reads as follows:
(b)(1) The following provisions of law in effect on the day before the effective date of this Act shall remain in effect for five years after the effective date as to an individual convicted of an offense or adjudicated to be a juvenile delinquent before the effective date and as to a term of imprisonment during the period described in subsection (a)(1)(B):

    .     .     .     .     .

(E) Sections 5017 through 5020 of title 18, United States Code, as to a sentence imposed before the date of enactment.

**8.** Counsel for Jackson contends that because Congress provided a savings clause in connection with 18 U.S.C. §§ 5017–20, by implication

Congress' failure to do the same with regard to any part of 18 U.S.C. § 5010 indicates that Congress did not intend *any* savings clause with regard to the same. *See Wilmington Trust Co. v. United States,* 28 F.2d 205, 208 (D.Del.1928). In addition, counsel for Jackson cites to the statement of the Tenth Circuit in *Brotherhood of Railroad Trainmen v. Denver and Rio Grande Western R.R. Co.,* 370 F.2d 833, 835 (10th Cir. 1966), *cert. denied,* 386 U.S. 1018, 87 S.Ct. 1375, 8 L.Ed.2d 456 (1967): "And it has specifically been held that the repeal of a law conferring jurisdiction, absent a savings clause for pending cases, destroys jurisdiction in pending cases."

The fact that Congress failed to enact a specific savings clause for section 5010(d) is not fatal to the application of 1 U.S.C. § 109 because there is no express or implied conflict between the application of the general savings clause in 1 U.S.C. § 109 and the specific savings provision in the Sentencing Reform Act of 1984. *See Warden v. Marrero,* 417 U.S. 653, 659 n. 10, 94 S.Ct. 2532, 2536 n. 10, 41 L.Ed.2d 383 (1974); *Great Northern Ry. Co. v. United States,* 208 U.S. 452, 464–68, 28 S.Ct. 313, 316–18, 52 L.Ed. 567 (1908). To the contrary, as is discussed more fully in the text, *infra,* the overall legislative purpose which this Court believes has clearly been expressed by Congress in connection with the enactment of the Sentencing Reform Act supports the application of 1 U.S.C. § 109 to this case.

(No. 16,594 (1875))). *See also Reisinger,* 128 U.S. at 401–02, 9 S.Ct. at 100–01; *Warden v. Marrero,* 417 U.S. 653, 661, 94 S.Ct. 2532, 2537, 41 L.Ed.2d 383 (1974).

The specific issue before this Court is whether a "no further benefit" finding pursuant to 18 U.S.C. § 5010(d) is a "penalty, forfeiture, or liability" within the meaning of 1 U.S.C. § 109. Even though a "no further benefit" finding is a central and unique part of YCA punishment, counsel for Jackson argues that such a finding is simply a remedy or a procedure, similar to the requirement that a presentence report be given to a defendant ten days prior to sentencing,[9] and that because a "no further benefit" finding is not itself a substantive penalty, 1 U.S.C. § 109 does not apply to it. *See Marrero,* 417 U.S. at 661, 94 S.Ct. at 2537; *see also, e.g., United States v. Mechem,* 509 F.2d 1193 (10th Cir.1975) (per curiam); *United States v. Blue Sea Line,* 553 F.2d 445 (5th Cir.1977). The determination of "whether a statutory change affects 'penalty' or 'procedure' ... is preliminary to application of the general savings clause." *Blue Sea Line,* 553 F.2d at 449. In addition:

> [S]tatutory language and legislative intent may be consulted in search of implications that Congress was either making a procedural change or *reassessing the substance of criminal liability or punishment.*
>
> ... [C]ases will arise in which it may fairly be said that a statutory change both alters a penalty and modifies a procedure. In determining whether [the general savings clause applies in such cases,] ... a court may inquire into the predominant purpose of the change—procedural modification or penal reassessment.

*Id.* at 449–50 (emphasis added).

Both the original purpose of the YCA— and the 1984 statutory changes—indicate strongly that repeal of section 5010(d) affected a substantive penalty. In enacting the YCA, Congress intended that "rehabilitative treatment should be substituted for retribution as a sentencing goal." *Durst v. United States,* 434 U.S. 542, 545, 98 S.Ct. 849, 851, 55 L.Ed.2d 14 (1978) (footnote omitted). *See also Ralston v. Robinson, supra; Dorszynski v. United States,* 418 U.S. 424, 432–34, 94 S.Ct. 3042, 3047–48, 41 L.Ed.2d 855 (1974). In *Ralston,* the Supreme Court pointed out that the YCA limited prison officials in connection with their discretionary imposition of treatment of a youth offender, and specifically provided for a different rehabilitative approach to be utilized. *See Ralston,* 454 U.S. at 206–10, 214–15, 102 S.Ct. at 242. A "no further benefit" finding enables the Bureau to transfer a sentenced offender from a YCA setting to a federal adult correctional institution in which the offender is not entitled to have the benefit of the same type of rehabilitative treatment, philosophy and programs which are required in a YCA institution. Such an offender is thus deprived of certain rights conferred upon him by the YCA. Thus, "the effect of a no further benefit finding is to strip from a YCA inmate all of the special provisions for housing, treatment and conditional release that are provided in the YCA. In essence, the sentence is transformed into a regular adult sentence." *Watts v. DuBois,* 660 F.Supp. 1246, 1248 (D.Colo.1987).[10] In this Court's view, a "no further benefit" finding therefore constitutes an additional penalty as that word is twice used in 1 U.S.C. § 109. For that reason alone, this Court believes that the general savings clause in 1 U.S.C. § 109 is applicable to the October 12, 1984 repeal of 18 U.S.C. § 5010(d).

In addition, this Court notes that in enacting the legislation in 1984 which repealed the YCA, Congress reassessed the form of punishment to be accorded youth offenders. The YCA was repealed because Congress believed that the "rehabilitative"

---

**9.** Counsel for both Jackson and the Government have briefed all issues discussed in this opinion, have supplied this court with copies of the briefs filed with the Ninth Circuit in the *Davison* case, and have adopted the respective positions taken in those briefs.

**10.** In *Watts,* Judge Matsch held that due process required that a "no further benefit" finding not be made without a hearing before the sentencing judge. 660 F.Supp. at 1249.

approach "has failed, ... [and was] not an appropriate basis for sentencing decisions." S.Rep. 225, 98th Cong., 2d Sess. 40, reprinted in 1984 U.S.Code Cong. & Admin. News 3182, 3223 (footnote omitted). Such a change in sentencing implicates more than mere procedure. Cf. Marrero, 417 U.S. at 664, 94 S.Ct. at 2538.

Most important of all, however, a consideration of the kind of common sense principles underlying the enactment of the general savings clause requires its application here. 1 U.S.C. § 109 was enacted in order to avoid certain aberrational results stemming from the repeal and reenactment of a criminal statute with stiffer penalties.[11] In this case, failure to apply the general savings clause would allow a youth offender, in effect, to "skate completely free," United States v. Breier, 813 F.2d 212, 215 n. 2 (9th Cir.1987), i.e., to be entitled to stay in a YCA setting even if a "no further benefit" finding were clearly required by his own conduct. In repealing the YCA, with respect to persons sentenced after the effective date of the repeal, Congress indicated a clear desire to bring to an end the segregation of youth offenders from adults because the rehabilitative model underlying that segregation had, in the view of Congress, failed to work. It is hard to believe that the same Congress intended that any inmate in a federal correctional institution serving a YCA sentence on the effective date of the repeal could assert the right not to be transferred after that certain date to adult status, regardless of the nature of his behavior and actions after the repeal. Assume, for example, that such an inmate had murdered a federal correctional officer in 1985 and had been convicted of the

same. In that scenario, if Jackson's position is correct, neither a federal district court nor the Bureau nor any other governmental authority would have the authority to make a "no further benefit" finding and to cause the transfer of such a person from youth offender status to adult status. The only way in which the Government could bring about the transfer of such a person to adult status would be to prosecute, convict and sentence him for the murder, then parole him and release him from serving the unexpired term of the sentence he was serving when be committed the murder, and thus make immediately effective the sentence imposed upon him for the murder. Surely, Congress did not intend that parole should be used for such a purpose or that such a procedure would be necessary in order to achieve the transfer from youth offender status to adult status.

As yet another illustration of the anomalous results which would occur if 1 U.S.C. § 109 does not apply, let us suppose that the hypothetical inmate described above, instead of committing a further offense, behaved continuously in a disruptive fashion in a youth corrections setting. In that case, there would be no way in which he could be transferred to an adult institution. Again, it is hard to attribute to the Congress which expressed such disenchantment with the YCA the intent to bring about such a result. Thus, common sense, as well as the language of 1 U.S.C. § 109, calls for the assertion of subject matter jurisdiction by a federal district court in a case such as this one in which the Government is seeking a "no further benefit" finding.[12] Finally, such a result

11. Anomalous results developed at common law when a criminal statute was repealed and reenacted with different penalties. A criminal defendant who was fortunate enough to have his offense made the subject of stiffer penalties was able to skate completely free. At common law the repealed statute could not be charged, nor could the replacement statute in view of ex post facto prohibitions.
United States v. Breier, 813 F.2d 212, 215 n. 2 (9th Cir.1987); see also Marrero, 417 U.S. at 660, 94 S.Ct. at 2536; Blue Sea Line, 553 F.2d at 447.

12. United States v. Mechem, 509 F.2d 1193 (10th Cir.1975) (per curiam), does not compel a dif-

ferent result. Mechem involved certain amendments to the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031–37. "[T]he clear intent [of the amendments was] to provide for handling the juvenile delinquent outside the criminal justice system." Id. at 1195. In Mechem, the Tenth Circuit viewed "the predominant purpose" of the amendments as "procedural and remedial," id. at 1196; see also id. at 1194, and distinguished it from cases such as Marrero, in which Congress made substantive alterations to the "penalties, forfeitures, and liabilities" imposed by the criminal justice system itself. See id. at 1195. Mechem therefore concluded that 1 U.S.C. § 109 did not apply.

appears fully to comport with the reasoning of *Ralston* and its progeny which are discussed in Part II, *infra.*

## II.

■ The fact that a federal district court, either prior to the repeal of the YCA or thereafter, has jurisdiction to make a "no further benefit" finding upon request by the Government does not necessarily mean that the factual circumstances permit the same. An examination of recent case law suggests the types of circumstances in which the court's exercise of the discretion to make such a finding is appropriate. In *Ralston,* the defendant had been convicted of a further federal offense while he was serving his YCA sentence. In *United States v. Coates,* 711 F.2d 345 (D.C.Cir. 1983), the United States Court of Appeals for the District of Columbia, in a per curiam opinion, affirmed a "no further benefit" finding by Chief Judge Aubrey E. Robinson, Jr. in a case in which the defendant had not committed any crime since his YCA sentence but, however, had been engaged in conduct which was "intractable and disruptive of YCA treatment programs" and had "received 37 misconduct reports during four-and-a-half years, including many for assault and one for the setting of a fire." *Id.* at 346. In *United States v. Won Cho,* 730 F.2d 1260 (9th Cir.1984), the defendant's probation had been revoked. In a split decision by an 8–3 vote, the majority of an en banc court distinguished *Ralston* and reversed the district court's "no further benefit" finding on the grounds that the court had no authority to issue such an order when the inmate had been guilty only of a violation of probation. In *Won Cho,* the Ninth Circuit concluded that the inmate was entitled not to be transferred from YCA to adult status simply because of the violation of his probation. In so holding, the majority opinion of the Ninth Circuit distinguished *Coates* on the grounds that it involved section 5010(c) (the section at issue herein), whereas *Won Cho* involved section 5010(b),[13] and noted: "In any event, to the extent that *Coates* may be inconsistent with our analysis, we do not follow it here." *Id.* at 1272 n. 14.

The Fourth Circuit has spoken twice concerning the circumstances which support a "no further benefit" finding. In *United States v. Hemby,* 753 F.2d 30 (4th Cir.), *cert. denied,* 471 U.S. 1068, 105 S.Ct. 2147, 85 L.Ed.2d 503 (1985), in an opinion by Chief Judge Winter, the Fourth Circuit affirmed the district court's entry of a "no further benefit" finding with regard to a defendant originally sentenced under section 5010(c) and later convicted of one or more crimes while in confinement. In *United States v. Robinson,* 770 F.2d 413 (4th Cir.1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986), Judge Hall affirmed a "no further benefit" finding in connection with a defendant originally sentenced to a split sentence under section 5010(b) and 18 U.S.C. § 5017(c). In so doing, Judge Hall wrote as follows:

> We recognize that the Ninth Circuit, in a similar case, has found that an adult sentence is greater than a YCA sentence

As indicated in the text of this opinion, this case, unlike *Mechem, does* involve alterations affecting penalties imposed by the YCA, *i.e.,* by the criminal justice system. Furthermore, in *Mechem,* the Tenth Circuit did not have to confront the issue of what Congress intended with respect to repeal in a situation in which, despite the repeal, Congress explicitly provided for the continuing existence of facilities and resources necessary to treat offenders who were sentenced before that repeal. In so providing, Congress hardly intended to require the Bureau to continue to house in a YCA institution an inmate who was disrupting the administration of that institution, especially when there would be available another federal confinement institution in which the person could be confined without disruption of its operation. And, of course, it is congressional intent which controls this Court's

interpretation of changes in the federal statutory law. *See Johnson v. Williford,* 682 F.2d 868, 870–71 (9th Cir.1982).

13. Section 5010(b), prior to its repeal in 1984, provided:

> If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Division as provided in section 5017(c) of this chapter....

and that "a YCA sentence may be converted to an adult sentence only when a district court has convicted a youth offender of an additional crime." *United States v. Won Cho,* 730 F.2d 1260, 1275 (9th Cir.1984). However, we agree with the government that the decision in *Won Cho* is erroneous, because the majority interpreted *Ralston* too narrowly.

*Id.* at 415 note.

In the view of this Court, *Coates* is correctly decided and provides by itself the correct application of the law in this case. But, additionally, the reasoning and philosophy which underlie both *Hemby* and *Robinson* provide guidance and instruction to this Court.[14] Accordingly, this Court concludes that where, as here, the inmate's parole has been revoked, that revocation provides an appropriate basis for the exercise of this Court's discretionary authority to make or not to make a "no further benefit" finding. The exercise of such discretion is appropriate irrespective of the inmate's conduct during the first period of his YCA confinement and during his renewed confinement after revocation of parole.

### III.

■ Even though this Court has jurisdiction to entertain the Government's request for a "no further benefit" finding, and even though the circumstances of this case permit the exercise of that jurisdiction, that does not, of course, mean that this Court should grant the "no further benefit" finding. The attached Stipulation of Facts indicates clearly that Jackson's conduct prior to the date of his parole was hardly exemplary. In any event, the revocation of his parole—not a matter for review by this Court—was rather clearly justified by his conduct on parole. Since his return to con-

finement after parole, Jackson has only been guilty of one infraction of confinement rules, and that took place after Englewood requested the Washington office of the Bureau to institute "no further benefit" proceedings.

Counsel for Jackson stresses that Jackson has made great strides while in federal correctional institutions, both before and after the period of his parole, and that he has completed certain YCA confinement programs in an exemplary manner. Those are positive factors in Jackson's favor. But this Court must take into consideration certain negative factors as well. Jackson committed a crime which caused this Court to sentence him to a lengthy term when he was 19 years old in 1976. His conduct while in confinement between 1976 and 1980 was far from the best—regardless of how well he did or did not do in certain rehabilitation programs. Even when, despite that conduct, Jackson was given the opportunity to be free on parole, he violated the trust so placed in him and was appropriately subjected to revocation of his parole. Under all the circumstances, on his return to confinement, Jackson could not be expected, in an overall sense, to obtain further benefit at the age of 30 from continued confinement in an institution with younger persons. In the eyes of this Court, the fact that Jackson may continue to receive good credits in YCA programs is not sufficient to overcome the negative factors. Accordingly, this Court finds that the Government has proved by a preponderance of the evidence that a "no further benefit" finding under section 5010(d) should be made and, therefore, this Court hereby makes such a finding.[15]

In support of his argument that this Court should exercise its discretionary authority against making a "no further bene-

---

**14.** "[T]he conflict among the circuits" is noted in *Watts v. DuBois,* 660 F.Supp. at 1248. While *Coates* is not cited in either *Hemby* or *Robinson,* what is stated and held by the Fourth Circuit in both *Hemby* and *Robinson* appears fully consistent with the approach set forth in *Coates.*

**15.** Jackson was afforded a full evidentiary hearing in this Court, during which the Government called as a witness an official of the Bureau familiar with the operation of federal youth

correctional institutions, and Jackson himself was both afforded, and took advantage of, the opportunity to testify. In addition, after the taking of evidence, this Court heard argument from counsel for both sides and afforded Jackson the opportunity to make a further statement from counsel table in amplification of what he had stated on the witness stand. After consultation with his able counsel, Jackson declined to take advantage of that opportunity. Thus, Jackson was afforded the full procedural due pro-

fit" finding, counsel for Jackson argues that such a finding would cause Jackson to lose favorable prison status, deprive him of his opportunity to receive more prompt and frequent parole hearings, and perhaps cause him to be moved further away from his common law wife who resides in Detroit, Michigan. At the present time, Jackson holds a Prison Industry Job at a Grade 1 pay level with starting pay of $1.20 per hour. He is also receiving interim parole hearings every six months. To the fullest extent that it is compatible with the appropriate administration of an adult confinement institution within the federal prison system, this Court recommends that the Bureau make every effort to place Jackson in a Prison Industry Job at a pay level at least as favorable to Jackson as the pay level Jackson has attained at Englewood. This Court also recommends that Jackson continue to receive interim parole hearings every six months to the fullest extent the same is compatible with procedures and practices of the federal parole authorities. Finally, this Court recommends that Jackson be confined at the Federal Correctional Institution at Milan, Michigan, at the Federal Correctional Institution at Butner, North Carolina, or at some other institution which is as close to Detroit, Michigan as Milan and, in any event, no further away from Detroit, Michigan than Englewood or Butner.[16] In making recommendations with regard to the selection of the adult confinement institution to which this Court anticipates Jackson will be transferred in the wake of this Court's "no further benefit" finding, this Court of course understands that the Bureau will desire to confine Jackson at a place consonant with whatever security arrangements the Bureau believes are required with respect to Jackson as an individual.

---

cess rights required in a "no further benefit" hearing. *See Coates v. Smith,* 746 F.2d 393, 395 (7th Cir.1984); *In re Coates,* 711 F.2d at 347; *Watts v. DuBois,* 654 F.Supp. 1147, 1149–50 (D.Colo.1987); *Watts v. DuBois,* 660 F.Supp. at 1249–50 (defining due process requirements in "no further benefit" hearings with respect to class of inmates at Englewood).

16. Jackson specifically requested that if he were not confined at Milan, he be confined at Butner.